[Cite as *State v. Galdamez*, 2015-Ohio-3681.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                                    :

      Plaintiff-Appellee,                              :

                                                 No. 14AP-527

v.                                                               :          (M.C. No. 2012 TRC 141077)

Dionicio A. Galdamez,                                    :          (REGULAR CALENDAR)

      Defendant-Appellant.                              :

---

D E C I S I O N

Rendered on September 10, 2015

---

*Richard C. Pfeiffer, Jr.,* **City Attorney,** *Lara N. Baker,* **City Prosecutor,** *Melanie R. Tobias* **and** *Orly Ahroni,* **for appellee.**

*Margaret W. Wong & Associates,* **and** *Margaret W. Wong,* **for appellant.**

---

APPEAL from the Franklin County Municipal Court

HORTON, J.

{¶ 1} Defendant-appellant, Dionicio A. Galdamez, appeals from a judgment of the Franklin County Municipal Court denying his motion to withdraw his guilty pleas. Because the trial court abused its discretion in denying the motion, we reverse.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} In the early morning hours of May 14, 2012, a police officer stopped defendant's vehicle for a traffic violation. Defendant received the following criminal charges as a result of that traffic stop: in case No. 2012 TRC 141077, defendant was charged with (1) operating a motor vehicle while impaired, in violation of R.C. 4511.19(A)(1)(a), (2) having a second OVI offense within 20 years of a prior OVI offense, in violation of R.C. 4511.19(A)(2)(a), and (3) driving left of center, in violation of R.C.

4511.25; in case No. 2012 CRA 13005, defendant was charged with possession of cocaine, in violation of R.C. 2925.11. Defendant had a prior OVI conviction from May 29, 2007.

{¶ 3}   On May 15, 2012, the state made a written plea offer to defendant, offering to amend Count 1 of the indictment in 2012 TRC 141077 to a stipulated first OVI offense within 6 years, in violation of R.C. 4511.19(A)(1)(a), and to dismiss Counts 2 and 3 of the indictment. As part of the plea agreement, defendant would also plead guilty to the amended charge of attempted possession of drugs in case No. 2012 CRA 13005. Defendant accepted the plea bargain that same day and pled guilty to the charges. During the plea colloquy, the trial court acknowledged that defendant was "not a U.S. citizen," and advised defendant, pursuant to R.C. 2943.031(A), as follows:

> THE COURT: Okay. I have to tell you three more things. You understand this conviction could be used to keep you from coming into the United States in the future? Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: It also could keep you from becoming a citizen. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And it could be used for deportation purposes. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

(May 15, 2012 Tr. 5.) The court concluded that defendant had knowingly, voluntarily and intelligently entered his guilty pleas.

{¶ 4}   Defense counsel noted that, although defendant was "not a U.S. citizen, he is documented to be here. He's here on a work permit, which is why there was some discussions about the potential consequences with his job * * * if he accepted the program," whereby the court would seal the record of the attempted possession of drugs conviction upon defendant's successful completion of the court's program. (May 15, 2012 Tr. 6-7.) Counsel noted that defendant had wanted "to fight the felony, because

[the cocaine] wasn't his," but stated that defendant decided to plead to the amended charge and enter the court's program because he understood "the far reaching consequences if he is indicted, with potential for his job, his citizenship, just living arrangements, everything could be jeopardized by that." (May 15, 2012 Tr. 7.) Counsel also noted her belief that the court's "program [wasn't] going to cause [defendant] any hurdles." (May 15, 2012 Tr. 7.) The court sentenced defendant to 180 days in jail, suspended 177 days, and credited defendant with 2 days of time served. The court also imposed a 1 year community control sanction, and suspended defendant's driver's license for 6 months.

{¶ 5} On July 31, 2012, defendant filed a motion to withdraw his guilty pleas. Defendant asserted that his trial counsel's failure to properly advise him of the immigration consequences of his guilty pleas deprived him of his constitutional right to the effective assistance of trial counsel. Defendant attached an affidavit to his memorandum, explaining that he fled his home country of El Salvador and entered the United States in 1998. Upon entry to the United States, defendant applied for Temporary Protected Status ("TPS"), which he received in 2002. Defendant explained that he received a letter from the United States Citizenship and Immigration Services ("USCIS") department on July 13, 2012, informing him that, because he had pled guilty to OVI and to the amended charge of attempted drug possession on May 15, 2012, and because he had a prior OVI conviction from May 29, 2007, defendant had "pled guilty to and been convicted of two or more misdemeanors committed in the United States." (Apr. 17, 2014 Tr., exhibit No. 2.) As such, defendant was ineligible for TPS pursuant to 8 C.F.R. 244.4(a) and, without legal authority to be in this country, defendant was subject to removal.

{¶ 6} On April 4, 2014, defendant filed a supplemental memorandum in support of his motion to vacate his guilty pleas. In the supplemental memorandum, defendant asserted that, although his trial counsel informed him that his guilty pleas "might have an impact on his ability to naturalize in the future," she "did not mention the immediate termination of his Temporary Protected Status ("TPS") as a mandatory and clear consequence of his guilty plea to the two misdemeanors." (Supplemental Memorandum in Support of Motion to Vacate Guilty Pleas, 1.) Defendant thus asserted that, despite

the trial court's R.C. 2943.031(A) advisement, he relied on his attorney's advice that his guilty plea would only cause him problems if he tried to become a citizen in the future. Defendant filed an amended affidavit in support of the supplemental memorandum, averring as follows:

> I was represented in both cases by a public defender * * *. I only met with [my attorney], briefly, right before my hearing where I pled guilty. She told me that my plea might cause me problems in becoming a citizen in the future. She never mentioned the consequences pleading to the misdemeanors would have on my Temporary Protected Status and that I would be subject to removal right away. I have had Temporary Protected Status in the United States since 2002. [My attorney] never told me whether she consulted with an immigration attorney regarding my immigration consequences. She counseled me that it would be better to 'get it all done at once' and that this was the 'best way to go.' We never discussed any legal strategies in my case or the consequence of entering a plea to the charges instead of trying to negotiate further or go to trial. [My attorney] was aware that I was not a U.S. citizen and not a lawful permanent resident. When the judge spoke to me about immigration consequences, I believed he was only discussing my ability to become a citizen in the future and not the consequences to my Temporary Protected Status. I never would have entered guilty pleas to the charged offenses and agreed to these dispositions if I had known that I would immediately lose my Temporary Protected Status and be subject to removal from the United States.

(Amended Affidavit, ¶ 3.)

{¶ 7} The trial court held a hearing on defendant's motion to withdraw his guilty pleas on April 17, 2014. Defense counsel clarified that defendant was "not arguing that the Court failed to give the proper immigration advisements required by statute," but that defendant was arguing that the court's advisement did "not foreclose the possibility of establishing ineffective assistance of counsel." (Apr. 17, 2014 Tr. 3-4.) Counsel asserted that defendant's trial counsel effectively misadvised him when she informed defendant that he may have problems naturalizing in the future, but did not state that his guilty plea would affect his TPS.

{¶ 8} Defendant testified briefly at the hearing, noting that, when he heard the court's R.C. 2943.031 immigration warnings, he continued to rely on his attorney's advice that he would only "have problems if [he] tr[ied] to become a citizen," and as such he never thought he would "lose what [he] had" with respect to his TPS. (Apr. 17, 2014 Tr. 13.) Defendant noted that he trusted his trial counsel, and stated that, if he had been advised correctly, he would have "looked for a lawyer and asked for time for next court or whatever, take it to a trial or something," as he "would have had nothing to lose" by going to trial. (Apr. 17, 2014 Tr. 13.) Defendant noted that he has a ninth grade education from El Salvador, and that he has a four-year-old son in this country who is a U.S. citizen.

{¶ 9} The court noted that it "accept[ed] the facts most favorably in [defendant's] light. But the transcript [was] the transcript, and [the court] clearly went through the things that need to be gone through." (Apr. 17, 2014 Tr. 9.) Thus, because the court provided defendant with the R.C. 2943.031 advisement, the court concluded that it could not grant defendant's motion to withdraw his guilty pleas. On June 10, 2014, the trial court filed an entry stating simply that, "[a]fter due consideration of the matters contained" in defendant's motion, the court found "[d]efendant's motion not to be well taken." (Entry, 1.)

## II. ASSIGNMENTS OF ERROR

{¶ 10} Defendant appeals, assigning the following errors for our review:

> I. THE TRIAL COURT ERRED WHEN IT DID NOT PERMIT THE APPELLANT'S GUILTY PLEAS TO BE VACATED AS HIS CRIMINAL ATTORNEY'S CONDUCT CONSTITUTES INEFFECTIVE ASSISTANCE OF COUNSEL UNDER THE TWO-PRONG *STRICKLAND* TEST.
>
> II. THE TRIAL COURT ERRED BY FAILING TO STATE CONCLUSIONS OF FACT AND LAW WHEN IT DENIED APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEAS AND VACATE CONVICTIONS.

{¶ 11} In his first assignment of error, defendant asserts that the trial court abused its discretion by denying his motion to withdraw his guilty pleas. Relying on *Padilla v. Kentucky*, 559 U.S. 356 (2010), defendant asserts that he was denied the

effective assistance of counsel when his counsel failed to advise him that his guilty pleas would result in the loss of his TPS benefits and his removal from this country. For the reasons which follow, we find that trial counsel's performance was deficient and that the court's R.C. 2943.031(A) advisement during the plea colloquy did not cure the prejudice resulting from that deficiency.

{¶ 12} Motions to withdraw guilty pleas are governed by Crim.R. 32.1, which provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Because defendant moved to withdraw his guilty plea after sentencing, the trial court had to determine whether granting the motion would correct a manifest injustice.

{¶ 13} The term manifest injustice "relates to some fundamental flaw in the proceedings which results in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Spivakov,* 10th Dist. No. 13AP-32, 2013-Ohio-3343, ¶ 10, citing *State v. Williams,* 10th Dist. No. 03AP-1214, 2004-Ohio-6123, ¶ 5. Manifest injustice " 'is an extremely high standard, which permits a defendant to withdraw his guilty plea only in extraordinary cases.' " *State v. Tabor*, 10th Dist. No. 08AP-1066, 2009-Ohio-2657, ¶ 6, quoting *State v. Price*, 4th Dist. No. 07CA47, 2008-Ohio-3583, ¶ 11. A defendant "bears the burden of establishing a manifest injustice based on specific facts in the record or facts supplied through affidavits attached to the motion." *State v. Sansone,* 10th Dist. No. 11AP-799, 2012-Ohio-2736, ¶ 7, citing *State v. Hagler,* 10th Dist. No. 10AP-291, 2010-Ohio-6123, ¶ 7. "Ineffective assistance of counsel can constitute a manifest injustice sufficient to allow the post-sentence withdrawal of a guilty plea." *State v. Dalton,* 153 Ohio App.3d 286, 2003-Ohio-3813, ¶ 18 (10th Dist.)

{¶ 14} "Absent an abuse of discretion on the part of the trial court, its decision concerning a post-sentence motion to withdraw [a] guilty plea must be affirmed." *State v. Tovar*, 10th Dist. No. 11AP-1106, 2012-Ohio-6156, ¶ 7, citing *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). An abuse of discretion is typically defined as an unreasonable, arbitrary, or unconscionable decision. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 15} To establish a claim of ineffective assistance of counsel, defendant must satisfy a two-prong test. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Defendant must show that (1) defense counsel's performance was so deficient that she was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) that defense counsel's errors prejudiced defendant. *Id.* The failure to make either showing defeats a claim of ineffectiveness of trial counsel. *Id.* at 697. Defendants have a Sixth Amendment right to the effective assistance of counsel when deciding whether to enter a guilty plea. *Padilla* at 364; *Strickland* at 686; *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

{¶ 16} A defense attorney has a duty to advise a noncitizen client that "pending criminal charges may carry a risk of adverse immigration consequences," and, if it is "truly clear" what those consequences are, counsel must correctly advise the defendant of the consequences. *Padilla* at 369. A defense attorney's failure to advise their client accordingly satisfies the first prong of *Strickland*, as it constitutes deficient performance. *Id.* However, because "[i]mmigration law can be complex," when the relevant immigration "law is not succinct and straightforward * * *, a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* Nevertheless, when the immigration consequences of a guilty plea can be "easily determined from reading the removal statute," and "the deportation consequence is truly clear * * * the duty to give correct advice is equally clear." *Id.*

{¶ 17} With respect to guilty pleas, a defendant may demonstrate prejudice under the second prong of the *Strickland* analysis by demonstrating that " 'there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty.' " *Xie* at 524, quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). *See Hill* at 59 (noting that, to establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). In *Padilla*, the Supreme Court of Ohio held that a defendant demonstrates prejudice in this context by convincing "the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla* at 372.

{¶ 18} *Padilla* concerned a noncitizen defendant who pled guilty to the charge of drug distribution, a deportable offense under 8 U.S.C. 1227(a)(2)(B)(i). Padilla's attorney did not advise him of the deportation consequences of his plea, and affirmatively misadvised Padilla that he had nothing to worry about with respect to his immigration status. Padilla asserted that "he would have insisted on going to trial if he had not received incorrect advice from his attorney." *Id.* at 359. The Supreme Court held that Padilla's trial counsel's failure to inform Padilla "whether his plea carrie[d] a risk of deportation" constituted deficient performance under the first prong of *Strickland*, as the relevant immigration statute was "succinct, clear, and explicit." *Id.* at 374, 368. The court did not address the issue of prejudice, and remanded the case for the lower court to determine the prejudice issue in the first instance.

{¶ 19} Notably, in *Padilla*, the Supreme Court rejected the government's proposition that *Strickland* should apply only "to the extent that [Padilla] ha[d] alleged affirmative misadvice." *Id.* at 369. The court agreed with Padilla that "there is no relevant difference 'between an act of commission and an act of omission' in this context." *Id.* at 370, quoting brief of respondent, 30. *See also Strickland* at 690; *State v. Ayesta*, 8th Dist. No. 101383, 2015-Ohio-1695, ¶ 15 (noting that counsel breaches its duty under *Padilla* "by either providing affirmative misadvice about immigration consequences, or by not providing any advice at all when advice is warranted"). The *Padilla* court observed that "[a] holding limited to affirmative misadvice would invite" the following two absurd results: (1) "it would give counsel an incentive to remain silent on matters of great importance, even when answers are readily available," and (2) "it would deny a class of clients least able to represent themselves the most rudimentary advice on deportation even when it is readily available." *Id.* at 370-71.

{¶ 20} Indeed, "[w]hen attorneys know that their clients face possible exile from this country and separation from their families, they should not be encouraged to say nothing at all." *Id.* at 370. The court further noted that " ' "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." ' " *Id.* at 368, quoting *INS v. St. Cyr*, 533 U.S. 289, 3223 (2001), quoting 3 Bender, Criminal Defense Techniques, Sections 60A.01-02 (1999). Thus, the court concluded that the "severity of deportation – 'the equivalent of banishment or exile,' * *

* – only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." *Id.* at 373-74.

{¶ 21} Pursuant to *Padilla*, we begin our analysis by asking whether the deportation consequences of defendant's guilty pleas were truly clear. 8 C.F.R. 244.4(a) provides that "[a]n alien is ineligible for Temporary Protected Status if the alien: * * * [h]as been convicted of any felony or two or more misdemeanors, as defined in § 244.1, committed in the United States." 8 C.F.R. 244.1 defines a misdemeanor as a crime committed in the United States which is "[p]unishable by imprisonment for a term of one year or less, regardless of the term such alien actually served." When defendant pled guilty to the OVI charge herein, he was convicted of a first-degree misdemeanor, punishable by a term of imprisonment of six months or less. *See* R.C. 4511.19(G)(1)(a); R.C. 2929.24(A)(1). Accordingly, the OVI conviction alone would have rendered defendant ineligible for TPS, as it was defendant's second misdemeanor OVI conviction. Defendant's guilty pleas thus rendered him ineligible for TPS.

{¶ 22} We find 8 C.F.R. 244.4(a) to be succinct, clear, and straightforward. Defendant's trial counsel could have easily determined that defendant's guilty pleas would make him ineligible for TPS by simply reading the text of the relevant regulation. *See State v. Martinez*, 10th Dist. No. 13AP-704, 2014-Ohio-2425, ¶ 27 (reviewing 8 C.F.R. 244.4 and similarly finding that the defendant's trial counsel could have easily determined that the defendant's "guilty plea would make him ineligible for a TPS benefit and, thus, subject him to deportation simply from reading the text" of the regulation). Because the deportation consequences of defendant's guilty pleas were truly clear, defense counsel was constitutionally obligated to advise defendant that his guilty pleas would result in the loss of his TPS benefits and in his deportation. As such, defendant has satisfied the first prong of the *Strickland* analysis.

{¶ 23} Accordingly, we turn to the prejudice prong of the *Strickland* analysis. The state contends that defendant is unable to demonstrate prejudice for the following reasons: (1) the trial court properly advised defendant pursuant to R.C. 2943.031(A), thereby curing any prejudice resulting from defendant's attorney's failure to so advise him, and (2) defendant has not shown that a decision to reject the plea bargain would have been rational under the circumstances. (Appellee's Brief, 13.)

A. *The R.C. 2943.031(A) advisement*

{¶ 24} R.C. 2943.031 obligates a trial court, prior to accepting a guilty plea from a noncitizen defendant, to provide the following advisement: "you are hereby advised that conviction of the offense to which you are pleading guilty * * * may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." R.C. 2943.031(A). As the plea hearing transcript reveals, the trial court substantially complied with R.C. 2943.031(A). *See State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, syllabus. Defendant notes that, "because his attorney only discussed naturalization problems," he believed "that would be the extent of the impact the plea would have on his immigration status," and thus "reasonably continued to rely on the assurances of his defense attorney despite the Trial Court's general warnings." (Appellant's Brief, 13.)

{¶ 25} Ohio courts have previously held that a trial court's proper advisement under R.C. 2943.031 cures the prejudice resulting from an attorney's deficient performance under *Padilla. See State v. Ikharo*, 10th Dist. No. 10AP-967, 2011-Ohio-2746, ¶ 19, citing *State v. Yazici*, 5th Dist. No. 2010CA00138, 2011-Ohio-583, ¶ 43 (holding that "Ohio courts since *Padilla* have concluded that *Padilla* is not implicated in cases where a trial court complied with R.C. 2943.031(A)," because the statute places a defendant "on notice that entry of a plea of guilty might have adverse consequences on the defendant's immigration status"). However, more recently, this court, other Ohio courts, and federal courts have begun to back away from the position that a trial court's general immigration advisement during the plea colloquy cures an attorney's failure to adequately inform their client regarding the immigration consequence of a plea. *See State v. Arrunategui*, 9th Dist. No. 26547, 2013-Ohio-1525, ¶ 15 (noting that, "[w]hile the State argue[d] that compliance with Revised Code Section 2943.031(A) in and of itself prevent[ed] Arrunategui from successfully proving he was prejudiced by counsel's performance," the court would not "hold that compliance with that statute is always determinative of the issue of prejudice").

{¶ 26} In *State v. Yahya*, 10th Dist. No. 10AP-1190, 2011-Ohio-6090, this court held that a defendant may establish prejudice despite the trial court's proper R.C. 2943.031 advisement, where the defendant received affirmative misadvice from counsel

regarding the immigration consequences of a plea. In *Yahya*, the noncitizen defendant asserted that her trial counsel provided constitutionally ineffective assistance by advising Yahya that her "plea would not adversely affect her immigration status." *Id.* at ¶ 3. We observed that the law was "sufficiently clear that appellant's theft conviction would constitute an aggravated felony" and subject Yahya "to deportation," and thus concluded that "assuming appellant's claims [were] true, her attorney's failure to give correct advice constitute[d] a deficiency sufficient to satisfy the first prong of the ineffective assistance of counsel test." *Id.* at ¶ 11.

{¶ 27} The state asserted, relying on *Ikharo* and *Yazici*, that Yahya could not establish prejudice, as the trial court had provided Yahya with the R.C. 2943.031 advisement during the plea colloquy. We distinguished both cases, observing that "[u]nlike *Ikharo* and *Yazici,* which were based on a lack of advice or a lack of complete advice from trial counsel," *Yahya* involved "an allegation that trial counsel gave incorrect legal advice to appellant." *Id.* at ¶ 14. Yahya averred that, when she asked her attorney about the immigration consequences of her plea, her attorney showed her a document which stated that she would not be subject to deportation if she pled guilty, thereby leading her "to believe that she would be safe from deportation." *Id.* at ¶ 14.

{¶ 28} Because Yahya relied on specific misadvice from her attorney, we held that "[w]hen the trial court subsequently delivered the statutory warning that pleading guilty *might* result in deportation, exclusion, or denial of naturalization, it might have been reasonable for appellant to rely on her attorney's specific assurance that she would not be deported." *Yahya* at ¶ 17. As such, we held that the trial court's R.C. 2943.031(A) advisement "would not necessarily cure her attorney's specific error regarding the consequences of a guilty plea," and remanded the case for the court to hold a hearing on Yahya's motion to withdraw her guilty plea.

{¶ 29} In *Yahya,* we distinguished *State v. Bains*, 8th Dist. No. 94330, 2010-Ohio-5143, where the trial court gave the R.C. 2943.031(A) statutory warning, but also " 'continued to probe even further into [the movant's] understanding of it by pointedly asking [the movant] if he understood the "serious consequences" of pleading guilty.' " *Yahya* at ¶ 16, quoting *Bains* at ¶ 28. We noted that in *Yahya* "it appear[ed] that the trial court only gave the statutory warning, without any further 'pointed' discussion of

the consequences of pleading guilty." *Id*. at ¶ 16. Thus, the trial court's probing inquiry beyond the mere statutory advisement in *Bains*, led the *Bains* court to conclude that the defendant therein could not "establish the requisite prejudice necessary to entitle him to relief." *Bains* at ¶ 29. *See also State v. Guerrero*, 12th Dist. No. CA2010-09-231, 2011-Ohio-6530, ¶ 10, 19, 20 (finding that the defendant "failed to prove that he was prejudiced" by his attorney's incorrect advice that he would not be deported as a result of his plea, as the court gave the R.C. 2943.031 advisement and "went further," telling the defendant it was the court's understanding that the "immigration people are going to seek your deportation"); *State v. Hrnjak*, 9th Dist. No. 26554, 2013-Ohio-5726, ¶ 13-14 (finding no *Padilla* violation when counsel and the court went beyond the statutory advisement to warn "that deportation was all but certain").

{¶ 30} Notably, the Eighth District Court of Appeals recently clarified that *Bains* "does not stand for the broad proposition that a trial court's proper advisement under R.C. 2943.031(A) 'cures' any potential prejudice and *always* precludes a finding of prejudice under *Padilla*." (Emphasis sic.) *State v. Yapp*, 8th Dist. No. 101247, 2015-Ohio-1654, ¶ 15. In *Yapp,* the court stated that it wanted to "move away from the progeny of *Bains*," including cases relied on by the state herein such as *State v. Lababidi*, 8th Dist. No. 96755, 2012-Ohio-267 and *State v. Velazquez*, 8th Dist. No. 95978, 2011-Ohio-4818, "that seemed to expansively interpret *Bains* as a bright line rule that the [R.C. 2943.031] advisement cures all prejudice." *Yapp* at ¶ 16. *See also Ayesta* at ¶ 20. Thus, in *Yapp,* the court held that, "although the trial court complied with its duty to advise the defendant pursuant to R.C. 2943.031 * * *, the record support[ed] the trial court's conclusion that," because Yapp's trial counsel failed to inform him that he would be deported as a result of his guilty plea, Yapp "did not appreciate his actual risk of deportation." *Id*. at ¶ 17. As such, the court affirmed the lower court's decision granting Yapp's motion to withdraw his guilty pleas.

{¶ 31} In *State v. Kostyuchenko,* 1st Dist. No. C-130257, 2014-Ohio-324, the court found prejudice, despite the trial court's proper R.C. 2943.031(A) advisement. There, trial counsel testified that he had a very brief conversation with Kostyuchenko prior to the plea colloquy, during which counsel told Kostyuchenko that "a felony conviction 'could get [him] deported' and [counsel] did not discuss with him any

available forms of relief." *Id.* at ¶ 8. Counsel also reviewed the written plea form with Kostyuchenko, which stated that his conviction may have the consequence of deportation. Kostyuchenko's guilty plea, however, made his deportation mandatory, not merely a possibility.

{¶ 32} As the advisement in the written plea form and the court's recitation of the statutory advisement at the plea hearing informed Kostyuchenko "only that he 'may' be deported," the reviewing court concluded that these advisements "did not provide the degree of 'accura[cy]' concerning immigration consequences that *Padilla* demands when, as here, federal immigration law plainly mandates deportation." *Id.* at ¶ 15. As such, the court concluded that "neither counsel's review of the plea form with Kostyuchenko, nor the trial court's compliance with R.C. 2943.031, effectively precluded a finding that Kostyuchenko had been prejudiced by counsel's violation of his duty under *Padilla* to advise him that he would be deported." *Id.* Accordingly, the reviewing court affirmed the lower court's decision granting Kostyuchenko's motion to withdraw his guilty pleas.

{¶ 33} In *United States v. Batamula*, _F.3d_, 5th Cir. No. 12-20630 (June 2, 2015), the Fifth Circuit Court of Appeals also found that a trial court's general advisement regarding deportation during a plea colloquy did not preclude the defendant from establishing prejudice. Batamula's trial counsel averred that he advised Batamula of the immigration consequences of his guilty pleas "based on the language (if any) of the plea agreement provided by the office," and averred that he did not tell Batamula that he would be deported as a result of his pleas. *Id.* During the plea colloquy, the trial court informed Batamula that "he would likely be deported after he served his sentence." *Id.* The reviewing court concluded that, given the Supreme Court's "repeated emphasis on the paramount importance of providing effective representation and competent advice regarding the immigration consequences of conviction before entry of the defendant's guilty plea," the court could not "conclude that the prejudice caused by a violation of that duty can be categorically erased by a judge's general and laconic statement during the plea colloquy that deportation is 'likely' after that bargaining process is complete, and immediately prior to the court's acceptance of the guilty plea." *Id.* The court thus noted that a defendant, who receives a general judicial admonishment

regarding immigration consequences during the plea colloquy, but who has not received specific immigration advice from counsel, "may reasonably 'interpret[] his lawyer's silence [in the face of the admonition] to mean that pleading guilty would not place him in jeopardy of deportation[.]' " *Id.*, quoting *United States v. Bonilla*, 637 F.3d 980, 984-85 (9th Cir.2011).

{¶ 34} Thus, while the trial court herein fully complied with R.C. 2943.031(A), the court's compliance with that statute does not cure the prejudice resulting from defendant's attorney's constitutionally deficient representation. *See United States v. Akinsade*, 686 F.3d 248, 255 (4th Cir.2012). Defendant was effectively misadvised regarding the immigration consequences of his plea. Defendant's attorney told him that his "plea might cause [him] problems in becoming a citizen in the future" and she "never mentioned the consequences pleading to the misdemeanors would have on [his] Temporary Protected Status [or] that [he] would be subject to removal right away." (Amended Affidavit, ¶ 3.) Trial counsel did not remain silent on the immigration consequences of defendant's pleas; rather, she provided defendant with some advice on a minor immigration issue, while failing to comment on the larger, more important immigration consequence of defendant's pleas–that defendant would clearly and undoubtedly lose his legal right to be in this country and be forced to leave his family.

{¶ 35} By only mentioning issues with respect to naturalization, and not commenting on the near certain consequence of deportation, defendant's attorney led defendant to believe that deportation was not a possible result of his guilty pleas. Accordingly, when the trial court subsequently advised defendant that his guilty pleas "could be used for deportation purposes," it was reasonable for defendant to continue to rely on his attorney's advice that his guilty pleas would only affect his ability to become a citizen in the future. (May 15, 2012 Tr. 5.) Defendant reasonably relied on his attorney's advice, and believed that advice to be competent and accurate. *See Yahya* at ¶ 17 (noting that "a defendant is entitled to rely on advice from counsel and to trust that the advice is competent and accurate"). The court's advisement alerted defendant to only potential or possible immigration consequences which could result from his pleas; the advisement failed to inform defendant that he would certainly and inevitably be removed from the country which he has resided in for the past seventeen years. Although the court

complied with R.C. 2943.031(A), the court did not engage in any deeper or more pointed discussion with defendant regarding the immigration consequences of his pleas.

{¶ 36} Counsel's deficient performance rendered defendant unable to appreciate the actual risk of deportation that would result from his guilty pleas, and the trial court's general R.C. 2943.031 advisement, unaccompanied by any further discussion on the immigration consequences of defendant's pleas, did not cure defendant's attorney's specific error. Accordingly, under the facts of this particular case, the trial court's R.C. 2943.031 advisement was insufficient to cure the constitutional error resulting from counsel's deficient performance.

B. *Rational Under the Circumstances*

{¶ 37} Defendant averred that he "never would have entered guilty pleas to the charged offenses and agreed to these dispositions if [he] had known that [he] would immediately lose [his] Temporary Protected Status and be subject to removal from the United States." (Amended Affidavit, ¶ 3.) Defendant asserts that, if he had received correct advice regarding the consequences of his pleas, he would not have pled guilty, and would have taken the cases to trial. In determining prejudice, we must ask whether a decision to reject the plea would have been rational under the circumstances. *Padilla* at 372.

{¶ 38} Initially, we observe that the timing of defendant's motion to withdraw his guilty pleas bolsters his assertion that he would not have entered the pleas if he had received constitutionally competent advice from his counsel. Defendant entered his guilty pleas on May 15, 2012, received the letter from USCIS on July 13, 2012, and filed his motion to withdraw his guilty pleas on July 31, 2012. In *Yahya,* we found that the timing of defendant's motion to withdraw her guilty plea, filed within six months of Yahya's guilty plea, "support[ed] her claim that she would not have pled guilty if she had been properly advised of the immigration consequences of that plea." *Id.* at ¶ 21. Defendant filed his motion to withdraw his guilty pleas a mere two and one-half months after entering his guilty pleas, and only two weeks after USCIS notified him that his TPS was being withdrawn.

{¶ 39} In *Yahya,* we also observed that, "assuming appellant's statements are true, it might be rational for her to insist on going to trial if a guilty plea automatically

subjects her to deportation." *Id.* at ¶ 22. We noted that Yahya, a native of Pakistan, had been a resident of the U.S. since 1996, or "more than one-third of her life," and that "her husband, to whom she has been married since 1999, [was] also a legal permanent resident of the United States." *Id.* at ¶ 22. As such, we held that Yahya might rationally "decide to take her chances at trial, rather than subject herself to automatic deportation," and concluded that, "if the trial court found the statements in appellant's affidavit to be true, she would have demonstrated that her counsel's performance was deficient and that, but for this deficient performance, she would not have entered a guilty plea." *Id.* at ¶ 22-23.

{¶ 40} Defendant fled El Salvador and entered this country in 1998 when he was seventeen years old. He has spent seventeen years, and his entire adult life, residing in this country. Defendant is employed, and has a four-year-old son who is a United States citizen. Defendant has only a ninth-grade education. Thus, defendant might have rationally decided to take his chances at trial rather than subject himself to automatic deportation and be removed from his child and the only adult life he has ever known. *See also Yapp* at ¶ 17 (noting that, "[i]n finding prejudice, the court noted that Yapp possessed limited education and language skills, had lived in the United States since 1998 and had three children").

{¶ 41} The state notes that, in *Tovar*, this court held that the determination of prejudice was an objective one, "which is dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Id.* at ¶ 13.[1] *See also Dando v. Yukins*, 461 F.3d 791, 798 (6th Cir.2006) (holding that, whether a decision to reject a plea bargain and go to trial would be rational, requires a "prediction of the likely outcome at trial"). During the hearing on the motion to withdraw, there was no discussion from either party regarding the likely outcome of a trial, and the trial court made no findings in its entry regarding defendant's potential defenses or what the likely outcome of trial would have been.

{¶ 42} In considering the likely outcome of trial, the court "need not determine to an absolute certainty that a jury would have acquitted * * * [r]ather, [the court] need only find a likelihood of a favorable outcome at trial." *Dando* at 802. *See Pilla v. United States*, 668 F.3d 368, 373 (6th Cir.2012) (analyzing Pilla's chance of success at trial and

---

[1] This further prejudice finding was not utilized or discussed in either *Yahya*, *Kostyuchenko*, or *Yapp*.

concluding that, because she "faced overwhelming evidence of her guilty," it would not have been rational for her to "have proceeded to trial"); *Haddad v. United States*, 486 Fed.Appx. 517, 521 (6th Cir.2012) (noting that Haddad's mere statement that "he would have gone to trial if his attorney had advised him that pleading guilty would make him deportable" was "not enough to establish prejudice"); *United States v. Abou-Khodor*, E.D. Mich. No. 99-CV-81073 (Aug. 30, 2013) (noting that defendant had established prejudice under *Padilla*, as a decision to reject the plea and go to trial would have been rational, where "[t]he evidence against him was weak and circumstantial, relying primarily on his fraternal connection to his brother who was also named as a defendant").

{¶ 43} The record before us provides little insight into the facts of the underlying charges or what defendant's defenses to those charges might have been. The state did not read the facts of the case into the record during the plea hearing. However, during the plea hearing, defense counsel did state that defendant initially had "some additional hesitation" about entering the court's diversion program "because ultimately, he may want to fight the felony, because [the cocaine] wasn't his." (May 15, 2012 Tr. 7.) Thus, there is at least some indication in the record that defendant may have had a defense to the possession charge. Additionally, defendant refused to submit to a test of his blood-alcohol content on the night of the incident, and thus scientific evidence of defendant's level of intoxication is not in the record. Defendant averred that his attorney did not discuss "any legal strategies in [his] case or the consequence of entering a plea to the charges instead of trying to negotiate further or go to trial." (Amended Affidavit, ¶ 3.)

{¶ 44} Notably, the court's decision denying the motion contains no findings, and states simply that, "[a]fter due consideration of the matters contained" in defendant's motion to withdraw his guilty plea, the court found the motion not to be well-taken. (Entry, 1.) *See State v. Creary*, 8th Dist. No. 82767, 2004-Ohio-858, ¶ 4 (noting that "while we give deference to factual findings, a judge's unexplained order makes no factual findings that require deference"). However, a review of the transcript from the hearing on the motion to withdraw reveals that the trial court denied defendant's motion based on the court's belief that defendant could not establish prejudice, as the

trial court had provided defendant with the R.C. 2943.031 advisement. (*See* Apr. 17, 2014 Tr. 8-9.)

{¶ 45} Accordingly, because the trial court denied the motion solely on the basis of the R.C. 2943.031 advisement, because there is at least some indication in the record that defendant had a defense to at least one of the charges, and considering the importance of the constitutional violation at issue herein, we find it appropriate to remand the case to the trial court for the parties to develop a record regarding the likely outcome of a trial. As such, we find the trial court abused its discretion by denying defendant's motion to withdraw his guilty plea solely on the basis of the court's R.C. 2943.031 advisement. Based on the foregoing, defendant's first assignment of error is sustained.

## IV. SECOND ASSIGNMENT OF ERROR - FINDINGS

{¶ 46} Defendant's second assignment of error asserts that the trial court erred by failing to state conclusions of fact and conclusions of law in its entry denying the motion. Defendant cites R.C. 2953.21(C) to support his contention that "[a] court's judgment entry denying post-conviction relief must include findings of fact and conclusions of law." (Appellant's Brief, 19.) However, the court's entry did not deny an R.C. 2953.21 petition for post-conviction relief; rather, it denied a Crim.R. 32.1 motion for withdrawal of a guilty plea. *See State v. Adams*, 2d Dist. No. 2014-CA-61, 2014-Ohio-5359, ¶ 11 (noting that "Crim.R. 32.1 does not require the trial court to issue findings of fact and conclusions of law when ruling on a motion to withdraw a plea"). As such, defendant's second assignment of error is overruled.

## V. DISPOSITION

{¶ 47} Having sustained defendant's first assignment of error, and having overruled defendant's second assignment of error, we reverse the judgment of the Franklin County Municipal Court and remand the case for proceedings consistent with this decision.

*Judgment reversed, case remanded.*

TYACK, J., concurs.
DORRIAN, J., dissents.

DORRIAN, J., dissenting.

{¶ 48} I believe the facts in this case are more analogous to the facts in *State v. Ikharo,* 10th Dist. No. 10AP-967, 2011-Ohio-2746, than to the facts in *State v. Yahya*, 10th Dist. No. 10AP-1190, 2011-Ohio-6090. In both of those cases, as well as in the case before us, the trial court gave the general immigration advice required by R.C. 2943.031(A). However, in *Yahya*, trial counsel provided incorrect legal advice to the defendant regarding immigration consequences; whereas, in *Ikharo*, and in the instant case, trial counsel provided the defendant with a lack of advice or a lack of complete advice regarding immigration consequences. Accordingly, and pursuant to my interpretation of this court's precedent, I respectfully dissent.

_____