[Cite as *State v. Hamed*, 2017-Ohio-1071.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2016-CA-27 |
| | : | |
| v. | : | Trial Court Case No. 2008-CR-838 |
| | : | |
| IHAB B. HAMED | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of March, 2017.

. . . . . . . . . .

NATHANIEL R. LUKEN, Atty. Reg. No. 0087864, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

GEORGE A. KATCHMER, Atty. Reg. No. 005031, 1886 Brock Road NE, Bloomingburg, Ohio 43106
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, Ihab B. Hamed, appeals from the trial court's denial of his motion to withdraw his plea of guilty to one count of engaging in a pattern of corrupt activity, a first degree felony in violation of R.C. 2923.32(A)(1); two counts of trafficking in heroin, a third degree felony and a fifth degree felony in violation of R.C. 2925.03(A)(1); two counts of possession of criminal tools, fifth degree felonies in violation of R.C. 2923.24(A); one count of trafficking in cocaine, a fifth degree felony in violation of R.C. 2925.03(A)(1); and one count of possession of cocaine, a fifth degree felony in violation of R.C. 2925.11(A). Hamed, who is not a citizen of the United States, contends that his plea should be vacated on the grounds of ineffective assistance of counsel because his attorney "told [him] that he must plead guilty" without any "discussion of the fact that a plea to a felony requires mandatory detention and nearly immediate [deportation] from the United States." Appellant's Br. 6. Based upon the record before us, we find that the trial court committed no abuse of discretion in overruling Hamed's motion to withdraw. Therefore, we affirm.

## I. Facts and Procedural History

{¶ 2} On November 26, 2008, a Greene County grand jury issued an eleven-count indictment against Hamed. The indictment charged him with: Count I, engaging in a pattern of corrupt activity; Count II, conspiracy to engage in a pattern of corrupt activity; Counts III, V and IX, trafficking in heroin; Counts IV, VIII and XI, possession of criminal tools; Count VI, trafficking in cocaine; Count VII, possession of cocaine; and Count X, possession of heroin. At his arraignment, on December 5, 2008, he entered a plea of not guilty.

**{¶ 3}** On May 22, 2009, Hamed appeared before the trial court to enter his plea. Counts II, V, X and XI were dismissed pursuant to the plea agreement, and because Counts VI and VII were allied offenses, the court did not convict him on Count VII. Count IX was amended to charge him with a third degree felony, instead of a first degree felony. The court sentenced him to serve a total of seven years in prison.

**{¶ 4}** On May 26, 2016, Hamed moved to withdraw his plea. The trial court overruled the motion in a decision dated July 13, 2016, and on August 3, 2016, he filed his notice of appeal. *Id.* at 79.

## II. Analysis

**{¶ 5}** For his sole assignment of error, Hamed offers the following proposition:

A PLEA THAT IS INVOLUNTARY AND UNKNOWING DUE TO THE INEFFECTIVENESS OF COUNSEL MUST BE VACATED.

**{¶ 6}** Hamed predicates his appeal on Crim.R. 32.1, which establishes that a "motion to withdraw a plea of guilty * * * may [in general] be made only before sentence is imposed," although a court "may set aside the judgment of conviction and permit the defendant to withdraw his * * * plea," even after sentencing, "to correct manifest injustice." In his brief, Hamed argues that the trial court should have permitted him to withdraw his plea under Crim.R. 32.1 because he received ineffective assistance of counsel and because his inability to understand English prevented him from intelligently and knowingly accepting the plea agreement. Appellant's Br. 5-6.

**{¶ 7}** Ineffective " 'assistance of counsel can constitute manifest injustice sufficient to allow the post-sentence withdrawal of a guilty plea.' " *State v. Cardenas*, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 38 (2d Dist.) (quoting *State v. Banks*, 2d Dist. Montgomery No.

25188, 2013-Ohio-2116, ¶ 9).   To succeed on a claim of ineffective assistance of counsel, a "defendant must show that (1) defense counsel's performance was so deficient that [it did not fulfill the right to assistance of counsel] guaranteed under the Sixth Amendment to the United States Constitution, and (2) * * * defense counsel's errors prejudiced the defendant."  *Id.* (citation omitted).   The defendant "has the burden of proof" on the "issue of counsel's ineffectiveness" because, "in Ohio, a properly licensed attorney is presumed competent."   *State v. Gondor*, 112 Ohio St. 3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62 (citing *State v. Calhoun*, 86 Ohio St. 3d 279, 289, 714 N.E.2d 905 (1999)).   Judicial "scrutiny of counsel's performance must be highly deferential," meaning that "a [trial] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *."   *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984) (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 100 L.Ed. 83 (1955)).   On appeal, a trial court's decision on a post-sentence motion to withdraw a guilty plea is reviewed for abuse of discretion.   *State v. Cardenas*, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 16 (citing *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 32); *State v. Davis*, 2d Dist. Montgomery No. 25221, 2012-Ohio-5913, ¶ 18 (citing *State v. Harris*, 2d Dist. Montgomery No. 19013, 2002-Ohio-2278, ¶ 7 (citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980))).

{¶ 8} With respect to the first prong of a claim of ineffective assistance, a " 'defense attorney has a duty to advise a noncitizen client that "pending criminal charges may carry a risk of adverse immigration consequences," and if it is "truly clear" what those consequences are, [then] counsel must correctly advise the defendant of [them].' "

*Cardenas*, 2016-Ohio-5537, ¶ 39 (quoting *State v. Galdamez*, 2015-Ohio-3681, 41 N.E.3d 467, ¶ 16 (10th Dist.) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 369, 130 S. Ct. 1473, 176 L.Ed.2d 284 (2010))). Hamed contends in his brief that "[t]here was no discussion by [c]ounsel of the immigration consequences of his plea." Appellant's Br. 6. Rather than offering him such advice, Hamed says that his attorney "simply told [him] that he must plead guilty." *Id.* Hamed made similar assertions in the affidavit he attached to his motion to withdraw.

{¶ 9} At his plea hearing on May 22, 2009, Hamed and the trial judge had the following exchange:

THE COURT: Now, you've indicated that you are not a citizen of the United States; is that correct?

THE DEFENDANT: I'm not citizen, no.

THE COURT: Okay. I want to tell you something because of that. Since you are not a citizen of the United States, I must advise you that a conviction of [the] offense[s] [to] which you're pleading guilty may have consequences of deportation, exclusion of admission to the U.S., [and] denial of naturalization under the laws of the U.S. These are all possible consequences.

Now, having advised you of that, do you need more time to consider going forward with your plea? Do you want more time or---well, first off, do you understand all those?

THE DEFENDANT: Yes, I understand.

THE COURT: Okay. Have you discussed those matters with your

attorney?

THE DEFENDANT: Well, we discussed this, me and the [p]rosecutor and my attorney together.

THE COURT: Uh-huh.

THE DEFENDANT: And I don't know what happened.

THE COURT: Okay. Well---

THE DEFENDANT: So---

THE COURT: Well, I don't know what could happen, okay. It's not my job to do that. I have nothing to do with those issues but because you are not a U.S. citizen, and because you'll receive a felony conviction because of this, those things could happen.

THE DEFENDANT: Yes, I understand.

THE COURT: Okay. Now, I guess with that understanding, do you want some more time to think about this, or do you want to go forward with your plea right now?

THE DEFENDANT: I need to make you aware if I hold---I mean, I'm getting a good deal. But the thing is, until the [p]rosecutor or this great deal for whatever he is pleading and talking about, about dismissing my case until I get my citizen privileges, a year, because I have a child now, and my wife here and my family already.

I don't want to go back to Jerusalem. That's where I come from, Jerusalem. It's horrible, and I don't want to go back to where I came from, and we discussed that, getting my case dismissed and help them with other

cases with another, with other cases and testifying against other people until I get my case clear.

* * *

[But] I did the crime, so I deserve what I deserve.

THE COURT: Okay.

THE DEFENDANT: I deserve to get deported.

Tr. of Guilty Plea 5-8, 10-11.

{¶ 10} The judge then spoke with defense counsel:

THE COURT: Mr. Mulligan, I want to ask you, obviously you and your client probably had conversations along this topic. I guess I'm interested just from the purest aspect of the plea, is there anything we're talking about here that you feel is creating any issues or concerns about the, going forward with the plea?

I guess my first question is, is going back to the question I ask[ed] about [Hamed's] understanding of the consequences of, of entering a plea to the felony here? Any thoughts on that?

MR. MULLIGAN: My belief, [Y]our Honor, is that my client understands where we are today, how we got here, and what we're doing here today.

I believe that he understands the consequences of entering a plea, and he understands, and I've told him that these charges will result in a deportation.

We have engaged in extraordinary discussions between my client

and various people in the government, and there was a hope that this would result in an extraordinary solution, and it has resulted in a solution that is difficult to accept, but at the same time it's logical.

*Id.* at 11-12.

**{¶ 11}** After this exchange with Hamed's attorney, the judge again asked Hamed to confirm that he was choosing to plead guilty despite the possibility of deportation:

THE COURT: Okay. Well, Mr. Hamed, let me just say this: I guess I have to go back to my original question.

I guess what I want you to be aware of, of, as a result of entering a guilty plea [in] this case, and as a result of being convicted in this case, you could be deported from the United States.

I cannot say that's going to happen. I don't know. I don't do that. But it is a possibility. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And with that understanding do you wish to go forward and have a hearing and enter a plea of guilty?

THE DEFENDANT: Yes.

*Id.* at 12-13.

**{¶ 12}** Hamed attached an affidavit to his motion to withdraw. Among other things, he averred that "Mr. Mulligan said nothing about [his] immigration status or the consequences of [his] plea." Aff. of Ihab B. Hamed ¶ 2, May 20, 2016.[1] He added that

---

[1] Hamed's motion to withdraw is Docket No. 75 in the trial court's record.

he "told [Mr. Mulligan] that [he] was in the process of getting [his] permanent residency and want[ed] to wait to plead," but "was told [that he] must plead when the prosecutor said," and he claimed that "[h]ad [Mr. Mulligan] told [him that he] would face mandatory detention and deportation, [he] would have structured [his] cooperation differently [or] would not have plead[ed] guilty." *Id.* at ¶ 4.

**{¶ 13}** In its decision on Hamed's motion, the trial court referred to the foregoing passages from the transcript of the plea hearing and determined that "the record * * * demonstrates that Mr. Hamed was advised that he faced possible deportation from the United States as a result of guilty pleas and conviction in this matter, and * * * after being advised of this fact * * *, nonetheless chose to go forward and plead guilty." Decision, Judgment & Entry Denying Defendant's Motion to Withdraw Guilty Plea, July 13, 2016, 3-7.[2] The court concluded that Hamed's "claim [of ineffective assistance of counsel] in this regard has no merit and totally lacks any credibility." *Id.* at 7.

**{¶ 14}** Having reviewed the trial court's decision and the balance of the record, we find that the trial court did not abuse its discretion in this respect. The court complied with the requirements of R.C. 2943.031(A) by advising Hamed that he could face deportation, exclusion from admission to the United States or denial of naturalization; furthermore, "where nothing in the record supports a defendant's claim that his plea was not knowingly and voluntarily made other than his own self-serving affidavit or statement, the record is insufficient to overcome the presumption that the plea was voluntary." (Citation omitted.) *State v. Laster*, 2d Dist. Montgomery No. 19387, 2003-Ohio-1564, ¶ 8. Here, Hamed clearly indicated during his plea hearing that he had been advised of

---

[2] The decision is Docket No. 79 in the trial court's record.

the immigration-related ramifications of pleading guilty and that, even so, he wanted to enter into the plea agreement. Tr. of Guilty Plea 12-15. The trial court, then, committed no abuse of discretion by relying on the transcript of Hamed's plea colloquy to the exclusion of his self-serving affidavit testimony. *See* Decision, J. & Entry Denying Def.'s Mot. to Withdraw Guilty Plea 2, 6-7.

{¶ 15} With respect to the second prong of a claim of ineffective assistance, "a defendant may demonstrate prejudice * * * by demonstrating that ' "there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty." ' " *State v. Cardenas*, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 41 (2d Dist.) (quoting *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L.Ed.2d 203 (1985))). Hamed now insists that he "would not have pled guilty if he had known he was subject to mandatory detention without bond and immediate [deportation]." Appellant's Br. 6-7. Yet, at his plea hearing, he stated that he "deserve[s] to get deported" because he "did the crime[s]" and confirmed that his attorney had answered "any and all of [his] questions"; that no person had forced him to plead guilty; and that he had decided to plead guilty because accepting the plea agreement was in his best interest. Tr. of Guilty Plea 10-11, 15 and 19. These statements flatly contradict Hamed's present claim that he would not have chosen to plead guilty had he been properly advised of the likelihood of deportation. Coupled with the fact that the trial court complied with the requirements of R.C. 2943.031(A), we hold that the court did not abuse its discretion by finding that Hamed failed to demonstrate prejudice as the result of alleged errors on the part of his attorney.

{¶ 16} Hamed also argues that his inability to understand English prevented him

from intelligently and knowingly accepting the plea agreement.   Appellant's Br. 5-6.   He notes that "no interpreter was at the plea" and suggests that "[o]n almost every page of the [t]ranscript, [he] indicates [that] he does not understand English or what is happening." *Id.* at 6.   Even a casual inspection of the transcript, however, completely belies this characterization.

{¶ 17} The transcript consists of slightly more than 46 pages (counting the caption-page), of which 37 include at least one statement made by Hamed.   Tr. of Guilty Plea 2-21, 23-33, 35-38, 41 and 44.   Out of these 37 pages, Hamed states that he does not understand something on only three—far fewer than "almost every page."   *Id.* at 9, 15 and 18; Appellant's Br. 6.   The subjects on which Hamed expresses a lack of understanding include applying for workers' compensation, "legal defenses to [the] charges" against him and the meaning of the word "voluntarily."   *Id.* at 9, 15 and 18. When Hamed stated that he did not understand what the trial court meant by "legal defenses," the judge allowed Hamed and his attorney to confer off the record, and when Hamed stated that he did not understand the word "voluntarily," the judge explained the word to him.   *Id.* at 15, 18.[3]

{¶ 18} Moreover, although the majority of Hamed's comments on record were simply "yes" or "no" answers, his responses to several questions illustrate that he comprehended the court's remarks.   For example:

THE COURT: All right.   During this hearing I'm going to ask you some questions, okay?   If there's any question that I ask you that you don't

---

[3] The judge did not discuss applying for workers' compensation benefits, presumably because the topic was irrelevant.

understand, I want you to ask me to make it clear for you; okay?

THE DEFENDANT: Okay. I understand it. My wife, can she explain to me what you say to me if I don't understand?

* * *

THE COURT: Okay. Are you taking any medication at all?

THE DEFENDANT: No. Right now I'm just taking an antibiotic for an infection.

* * *

THE COURT: Okay. Okay. We, we've discussed a couple other matters here. Are there any other deals present in this case?

THE DEFENDANT: I haven't got a[nother] deal, but when I first got caught, I had been told a lot of things from the detectives. I've been told when I rode with them in the car after I got captured. I've been told a lot of things, and it never happened. * * *.

*Id.* at 2-3, 13, 25. These responses demonstrate that Hamed grasped the substantive content of the judge's words, as opposed to having had merely an awareness of being asked a question. On consideration of the transcript of Hamed's plea colloquy, we find that the trial court did not abuse its discretion by determining that Hamed had sufficient understanding of English to enter his plea intelligently and knowingly.

### III. Conclusion

{¶ 19} We hold that the trial court did not abuse its discretion when it overruled Hamed's motion to withdraw his plea. The court complied with the requirements of R.C. 2943.031(A), and the record supports the court's findings that Hamed's attorney properly

advised him of the possible immigration consequences of pleading guilty to a felony, and that Hamed's understanding of English permitted him to enter an intelligent and knowing plea of guilty. Therefore, Hamed's sole assignment of error is overruled, and the decision of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, P.J. and FROELICH, J., concur.

Copies mailed to:

Nathaniel R. Luken
George A. Katchmer
Hon. Stephen Wolaver