[Cite as *State v. Cardenas*, 2016-Ohio-5537.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2015-CA-16 |
| | : | |
| v. | : | Trial Court Case No. 2011-CR-58 |
| | : | |
| SEBASTIAN CARDENAS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of August, 2016.

. . . . . . . . . .

DEBORAH S. QUIGLEY, Atty. Reg. No. 0055455, Assistant Darke County Prosecuting
Attorney, 504 South Broadway Street, Greenville, Ohio 45331
        Attorney for Plaintiff-Appellee

KAREN D. BRADLEY, Atty. Reg. No. 0066141, 300 College Park, Dayton, Ohio 45469
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Sebastian Cardenas, appeals from the judgment of the Darke County Court of Common Pleas overruling his motion to withdraw his guilty plea. For the reasons outlined below, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 2} Cardenas is a 61-year-old Mexican citizen who has been a lawful, permanent resident of the United States since 1989. He has a wife and three children who are all United States citizens. Cardenas and his family have lived in Ansonia, Darke County, Ohio, since approximately 2006.

{¶ 3} On February 25, 2011, the Darke County Grand Jury indicted Cardenas on two counts of trafficking cocaine in an amount exceeding five grams but less than ten grams, both felonies of the fourth degree, as well as one fifth-degree-felony count of trafficking cocaine, all in violation of R.C. 2925.03(A)(1). Although he initially pled not guilty to the charges, on April 21, 2011, Cardenas entered into a plea agreement and pled guilty to the two fourth-degree felony trafficking charges. In exchange for his plea, the State dismissed the fifth-degree felony trafficking charge and agreed to not oppose a presentence investigation. As part of the agreement, Cardenas also agreed to pay $375 to the Miami Valley Regional Crime Laboratory and $875 to the Darke County Sheriff's Office.

{¶ 4} Following Cardenas's plea, on May 31, 2011, the trial court imposed a nine-month prison term for each of Cardenas's trafficking offenses. The trial court ordered Cardenas's prison terms to run concurrently for a total term of nine months in prison.

The trial court also ordered Cardenas to pay the restitution that was agreed upon by the parties.

{¶ 5} On March 30, 2015, three years after he had already completed his prison sentence, Cardenas filed a motion with the trial court seeking to withdraw and vacate his guilty plea. In the motion, Cardenas argued that the trial court did not properly advise him at the plea hearing of the potential consequences his guilty plea would have on his immigration status as required by R.C. 2943.031. Cardenas also argued that he received ineffective assistance of counsel when his former attorney failed to properly inform him of the possibility of deportation. In support of these claims, Cardenas attached his own affidavit claiming he did not understand the deportation consequences of entering his plea, as well as an affidavit from his former attorney who claimed that he did not discuss the possibility of deportation with Cardenas. Cardenas also alleged that he would not have pled guilty had he known that he would be subject to deportation.

{¶ 6} In addition to these claims, Cardenas further alleged in his affidavit that approximately two weeks after his sentencing hearing he received a notice from the Department of Homeland Security ("DHS") notifying him that he was charged with removability and could be deported under the Immigration and Nationality Act as a result of his conviction. According to Cardenas's affidavit, this was the first time he became aware that he could be deported and understood the serious nature of his plea.

{¶ 7} Cardenas also averred that on June 12, 2013, the immigration court ordered him to be deported and he provided supporting documentation to that effect. The affidavit and documentation further indicated that Cardenas appealed the order of deportation, which the Board of Immigration Appeals affirmed on August 25, 2014.

Cardenas claims he then appealed to the United States Sixth Circuit Court of Appeals on September 23, 2014. Cardenas filed his motion to withdraw guilty plea while the Sixth Circuit appeal was pending. According to Cardenas, the Sixth Circuit ultimately denied his petition on September 10, 2015.

{¶ 8} While the Sixth Circuit appeal was pending, on April 9, 2015, the trial court held a hearing on Cardenas's motion to withdraw guilty plea. Cardenas and his former attorney appeared and testified at the hearing. Cardenas testified that his former attorney never discussed the potential for deportation if he pled guilty. However, Cardenas testified that the trial court advised him of the possibility of deportation at the plea hearing and that he fully understood that he could be deported, but did not think he would be because his attorney said he "probably wouldn't have any problems." Hearing Trans. (Apr. 9, 2015), p. 32.

{¶ 9} In addition to this testimony, Cardenas's former attorney testified that he did not research whether Cardenas's guilty plea would have immigration consequences and did not explain to Cardenas that pleading guilty would subject him to deportation. The attorney testified that he advised Cardenas that he would not be deported based on his status as a lawful, permanent resident. His attorney also acknowledged that the trial court advised Cardenas of the deportation consequences at the plea hearing and that Cardenas was aware of the advisement. Additionally, Cardenas's attorney claimed that Cardenas did not ask him any questions about the trial court's deportation advisement and never asked him to withdraw his plea thereafter.

{¶ 10} During the hearing, both Cardenas and his former attorney also testified to an alleged language barrier that they claim contributed to Cardenas's misunderstanding.

Cardenas's attorney testified that Cardenas "didn't really understand English" and that he used Cardenas's wife and daughter as interpreters during their meetings. *Id.* at 15. Cardenas testified that Spanish is his "best" language and that his proficiency at English is about 40 percent; however, he admitted to speaking some English at home with his family. While Cardenas requested an interpreter for the motion hearing, he testified that he did not request an interpreter for the plea hearing because he planned on using his daughter as an interpreter, which the court did not allow.

{¶ 11} On May 8, 2015, following the hearing on Cardenas's motion to withdraw guilty plea, Cardenas filed a post-hearing memorandum in support of his motion. In the memorandum, Cardenas conceded that the trial court provided a warning at the plea hearing that substantially complied with the advisement in R.C. 2943.031(A) and that he understood the advisement. Cardenas also clarified that he was not challenging the court's explanation of the warnings in R.C. 2943.031(A), but rather his former attorney's failure to research the immigration-related consequences of his guilty plea and failure to advise him that deportation was a possibility.

{¶ 12} Three weeks later, on May 29, 2015, the trial court issued a written decision denying Cardenas's motion to withdraw guilty plea on grounds that: (1) the motion was untimely; (2) the motion was barred by res judicata; (3) no language impediment existed that kept Cardenas from understanding the deportation consequences of his plea; and (4) Cardenas failed to demonstrate a manifest injustice through ineffective assistance of counsel because his trial counsel did not provide deficient performance and Cardenas suffered no prejudice. In so holding, the trial court noted that Cardenas was "gracious to concede that the [trial court's] non-literal reading of R.C. 2943.031 was * * * an effective

communication of the rights and notices contained therein" and that Cardenas "agreed that he understood the inquiry by the Court." Judgment Entry Overruling Defendant's Motion to Withdraw Plea (May 29, 2015), Darke County Court of Common Pleas Case No. 2011-CR-58, Docket No. 31, p. 12.

{¶ 13} Cardenas now appeals from the trial court's decision denying his motion to withdraw guilty plea, raising four arguments for our review. Although not designated as assignments of error, Cardenas's four arguments are summarized as follows:

1.  The motion to withdraw guilty plea should have been granted because the trial court failed to substantially comply with the statutorily required advisements to noncitizens contained in R.C. 2943.031(A).

2.  The trial court erred in finding the motion to withdraw guilty plea untimely.

3.  The motion to withdraw guilty plea should have been granted based on ineffective assistance of trial counsel.

4.  Res judicata does not bar the trial court from ruling on the motion to withdraw guilty plea.[1]

**II. Law and Analysis**

{¶ 14} As a preliminary matter, we note that Cardenas's motion to withdraw guilty plea sought to withdraw his plea based on both R.C. 2943.031 and Crim.R. 32.1. "Criminal defendants who are not United States citizens are permitted to withdraw a guilty

---

[1] We reordered Cardenas's arguments for purposes of clarity.

plea in two distinct ways: (1) upon the finding that they were not given the warning required by R.C. 2943.031(A)(1) (and that the court was not relieved of that requirement under R.C. 2943.031(B)) of the potential consequences to their resident status in the United States when they pled guilty to criminal charges (among other related requirements contained in R.C. 2943.031(D)), or (2) when a court finds, pursuant to Crim.R. 32.1, that it is necessary to correct manifest injustice." (Footnotes omitted.) *State v. Toyloy*, 10th Dist. Franklin No. 14AP-463, 2015-Ohio-1618, ¶ 12.

{¶ 15} Section (F) of R.C. 2943.031 "clarifies that the statute does not prevent a trial court from granting a plea withdrawal under the procedural rule, Crim.R. 32.1." *Id.* Thus, R.C. 2943.031 provides "an independent means of withdrawing a guilty plea separate and apart from and in addition to the requirements of Crim.R. 32.1." *State v. Weber*, 125 Ohio App.3d 120, 129, 707 N.E.2d 1178 (10th Dist.1997). Accordingly, when a motion to withdraw plea is premised under R.C. 2943.031(D), the usual "manifest injustice" standard applied to Crim.R. 32.1 motions does not apply; rather, the standards in R.C. 2943.031 apply. *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 26.

{¶ 16} However, regardless of whether the motion to withdraw plea is based on R.C. 2943.031 or Crim.R. 32.1, an appellate court reviews a trial court's decision on the motion under an abuse of discretion standard. *Id.* at ¶ 32. Generally, "[a] trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). The exercise of discretion for motions based on R.C. 2943.031 applies to the trial court's decision on

whether the elements in section (D) of the statute have been established while considering other factors such as timeliness.   *Francis* at ¶ 34.

### *1. Substantial Compliance with R.C. 2943.031(A)*

**{¶ 17}** Under his first claim, Cardenas contends the trial court abused its discretion in overruling his motion to withdraw guilty plea because the trial court failed to comply with R.C. 2943.031(A) by not properly advising him of the possible immigration-related consequences of pleading guilty during the plea hearing.   We disagree.

**{¶ 18}** Section (A) of R.C. 2943.031 provides the advisement a trial court is required to give prior to accepting a plea from an offender who is not a citizen of the United States.   That section of the statute provides as follows:

Except as provided in division (B) of this section, prior to accepting a plea of guilty or a plea of no contest to an indictment, information, or complaint charging a felony or a misdemeanor other than a minor misdemeanor if the defendant previously has not been convicted of or pleaded guilty to a minor misdemeanor, the court shall address the defendant personally, provide the following advisement to the defendant that shall be entered in the record of the court, and determine that the defendant understands the advisement:

"If you are not a citizen of the United States, you are hereby advised that conviction of the offense to which you are pleading guilty (or no contest, when applicable) may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to

the laws of the United States."

R.C. 2943.031(A).

**{¶ 19}** Even though R.C. 2943.031(A) supplies specific language for the trial court to use in warning a defendant of the possible immigration consequences of pleading guilty, the Supreme Court of Ohio has held that only substantial compliance with the statute is necessary. *Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355 at ¶ 46. Specifically, the Supreme Court held that:

> [I]f some warning of immigration-related consequences was given at the time a noncitizen defendant's plea was accepted, but the warning was not a verbatim recital of the language in R.C. 2943.031(A), a trial court considering the defendant's motion to withdraw the plea under R.C. 2943.031(D) must exercise its discretion in determining whether the trial court that accepted the plea substantially complied with R.C. 2943.031(A). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. * * * The test is whether the plea would have otherwise been made." [*State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990)]; see, also, [*State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12].

*Francis* at ¶ 48.

**{¶ 20}** Section (D) of R.C. 2943.031 details the consequences of a trial court's failure to comply with the advisement in section (A). Upon such a failure, the statute requires the court to set aside the judgment and permit the defendant to withdraw his or

her plea.   R.C. 2943.031(D) provides that:

>            Upon motion of the defendant, the court shall set aside the judgment and permit the defendant to withdraw a plea of guilty or no contest and enter a plea of not guilty or not guilty by reason of insanity, if, after the effective date of this section, the court fails to provide the defendant the advisement described in division (A) of this section, the advisement is required by that division, and the defendant shows that he is not a citizen of the United States and that the conviction of the offense to which he pleaded guilty or no contest may result in his being subject to deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

{¶ 21} "The clear and unambiguous language of subsection (D) of the statute requires the trial court to set aside a conviction and allow the defendant to withdraw his guilty plea if the following four requirements are met: '1) the court failed to provide the advisement described in the statute; 2) the advisement was required to be given; 3) the defendant is not a citizen of the United States, and 4) the offense to which the defendant pled guilty may result in the defendant being subject to deportation, exclusion, or denial of naturalization under federal immigration laws.' "   *State v. Ayupov*, 2d Dist. Montgomery No. 21621, 2007-Ohio-2347, ¶ 12, quoting *Weber*, 125 Ohio App.3d at 126, 707 N.E.2d 1178.

{¶ 22} Cardenas contends the trial court failed to substantially comply with the advisement required by R.C. 2943.031(A) because he claims, at the plea hearing, the court simply advised that he could be deported, but did not mention the other immigration-

related consequences of his guilty plea.   In support of his claim, Cardenas cites to *State v. Hernandez-Medina*, 2d Dist. Clark No. 06CA0131, 2008-Ohio-418, a case in which we held that the trial court did not substantially comply with the statutory advisement because the court failed to mention two out of the three separate distinct consequences set forth in the advisement, i.e., that the defendant's guilty plea might result in exclusion from admission to the United States or denial of naturalization.   *Id.* at ¶ 30.

{¶ 23} In the present case, we are unable to determine what exactly the trial court said to Cardenas at the plea hearing because Cardenas failed to file a transcript of the hearing.   However, it appears as though a transcript of the hearing exists because both parties cited to it in either their appellate brief or memoranda filed with the trial court.   In fact, the State specifically cited to it while discussing the trial court's alleged deportation advisement.

{¶ 24} R.C. 2943.031(E) instructs that "[i]n the absence of a record that the court provided the advisement described in division (A) of this section and if the advisement is required by that division, the defendant shall be presumed not to have received the advisement."   Here, it is questionable whether there is an "absence of a record that the court provided the advisement" since it appears as though a record of the trial court's advisement exists, but was simply not provided to this court.   This is in contrast to cases where the defendant claims no record exists or the parties stipulate that the proceedings were never transcribed.   *See, e.g., Cleveland Heights v. Roland*, 197 Ohio App.3d 661, 2012-Ohio-170, 968 N.E.2d 564, ¶ 14, 19; *State v. Lovano*, 8th Dist. Cuyahoga No. 100578, 2014-Ohio-3418, ¶ 2,10.   Applying R.C. 2943.031(E) to the circumstances in this case may encourage appellants to not provide appellate courts with the portions of

the record that contain the trial court's advisement.

{¶ 25} Nevertheless, we need not grapple with R.C. 2943.031(E) because regardless of the missing plea hearing transcript, the fact remains that Cardenas conceded during the lower-court proceedings that the trial court's advisement at the plea hearing substantially complied with R.C. 2943.031(A) and that he understood the advisement. *See* Defendant's Post-Hearing Memorandum (May 8, 2015), Darke County Court of Common Pleas Case No. 2011 CR 00058, Docket No. 29, p. 2, 6. As a result of this concession, the trial court did not specifically analyze the substantial compliance issue in its decision, but merely noted that Cardenas conceded that the trial court's advisement effectively communicated the rights and notices contained in the statute. Accordingly, the issue of substantial compliance with the advisement in R.C. 2943.031(A) was waived by Cardenas and is not properly before this court. *See State v. Willis*, 12th Dist. Butler No. CA2012-08-155, 2013-Ohio-2391, ¶ 16-17, citing *State v. McMullen*, 12th Dist. Butler No. CA2009-09-235, 2010-Ohio-3369, ¶ 20-23 (finding an issue is waived for appeal when a defendant raises the issue in his written motion, but then later concedes at the motion hearing that he is no longer raising that issue); *State v. Robinson*, 7th Dist. Mahoning No. 94-CA-42, 1998 WL 404216, * 3 (July 10, 1998) (finding the appellant cannot appeal a conceded issue).

{¶ 26} Cardena's first argument is overruled.


**2. Timeliness of Cardenas's Motion to Withdraw Guilty Plea**

{¶ 27} Under his second claim, Cardenas contends the trial court abused its discretion in finding that his motion to withdraw guilty plea was untimely filed. We again

disagree.

**{¶ 28}** The timeliness of a motion to withdraw guilty plea is a factor that should be taken into account when determining whether it is appropriate to afford relief under R.C. 2943.031(D). *Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355 at ¶ 40. "The more time that passes between the defendant's plea and the filing of the motion to withdraw it, the more probable it is that evidence will become stale and that witnesses will be unavailable." *Id.* "It is certainly reasonable to require a criminal defendant who seeks to withdraw a plea to do so in a timely fashion rather than delaying for an unreasonable length of time." *Id.* However, "[t]his is not a situation that requires a bright-line rule. As one of many factors underlying the trial court's exercise of discretion in considering the motion to withdraw, timeliness of the motion will be of different importance in each case, depending on the specific facts." *Id.* at ¶ 42.

**{¶ 29}** The timeliness of a motion to withdraw guilty plea may also be considered when determining whether a defendant may withdraw his or her plea pursuant to Crim.R. 32.1. While Crim.R. 32.1 does not prescribe a time limitation, an " 'undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion under Crim.R. 32.1 is a factor adversely affecting the credibility of the movant and militating against the granting of the motion.' " *State v. Bush*, 96 Ohio St.3d 235, 2002-Ohio-3993, 773 N.E.2d 522, ¶ 14, quoting *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph three of the syllabus.

**{¶ 30}** In *Ayupov*, 2d Dist. Montgomery No. 21621, 2007-Ohio-2347, the defendant filed his motion to withdraw guilty plea 14 months after first discovering that his immigration status was at risk because of his conviction. *Id.* at ¶ 16. We held that the

14-month delay was reasonable since the defendant had to retain new counsel and obtain the video from his plea hearing to complete the record.   *Id.*

**{¶ 31}** In *State v. Huang*, 8th Dist. Cuyahoga No. 99945, 2014-Ohio-1511, the defendant was convicted of a domestic violence charge in 2001 following a no contest plea and then was contacted by immigration authorities in 2004 regarding a removal hearing.   *Id.* at ¶ 3-4.   The removal hearing was canceled and the defendant was subsequently convicted of additional felony charges in 2009.   *Id.* at ¶ 4.   In 2011 and 2012, the defendant again received notices regarding deportation proceedings resulting from his criminal history.   *Id.*   In December 2012, the defendant filed a motion to withdraw his 2001 no contest plea on the basis of ineffective assistance of counsel for counsel's failure to advise him of the immigration-related consequences of his plea.   *Id.* at ¶ 1, 5.   In considering the defendant's claim, the Eighth District found his 2012 motion to withdraw guilty plea untimely.   *Id.* at ¶ 16.   The court held that the 2004 notice "alone should have put Huang on notice that his legal issues were compromising his ability to lawfully remain in the United States.   Yet, despite this warning, Huang did not make any effort to withdraw his no contest plea. It was only after his 2009 conviction for menacing by stalking, followed by his receipt of the removal letters in 2011 and 2012, that Huang decided to revisit his 2001 no contest plea."   *Id.*

**{¶ 32}** Similarly, in *State v. Abukhalil*, 8th Dist. Cuyahoga No. 97129, 2012-Ohio-1639, the Eighth District held that a seven-year delay in filing a motion to withdraw guilty plea was unreasonable.   The defendant in that case filed an affidavit stating that he did not understand the immigration consequences of his plea until he was ordered to be deported from the United States, which occurred eight months after entering his guilty

plea. *Id.* at ¶ 19. Because he filed his motion to withdraw guilty plea seven years after that and provided no explanation for the delay, the court found the motion untimely. *Id.*

{¶ 33} However, in *State v. Sibai*, 8th Dist. Cuyahoga No. 84407, 2005-Ohio-2730, the Eighth District determined that a defendant's nine-year delay in filing a motion to withdraw guilty plea was reasonable. The defendant in that case entered his plea in 1995 and did not seek to withdraw it until 2004. *Id.* at ¶ 10. The defendant got married in 1997 and reported to the immigration office in order to change his status from "political asylum" to "married." At that time, the defendant told the immigration officer about his felony and the officer instructed him to file a "waiver of his felony," in which he indicated he was the sole supporter of his family. *Id.* The waiver was never ruled on; yet, every year, the defendant's work permit was renewed. *Id.* In 2002, the defendant was notified that all non-citizens were required to register with the Immigration Department, which the defendant did. *Id.* Thereafter, he was arrested and told he was to be deported. *Id.* The defendant's motion to withdraw guilty plea was considered timely by the Eighth District because the defendant was not notified that he was to be deported until approximately 12 to 18 months prior to filing the motion. *Id.* at ¶ 12.

{¶ 34} In the present case, Cardenas was convicted and sentenced on May 31, 2011, and he completed his prison sentence sometime in February 2012. Approximately two weeks after his conviction, in June 2011, the DHS issued a notice advising him that he could be deported under the Immigration and Nationality Act as a result of his conviction. Cardenas averred in his affidavit attached to his motion to withdraw guilty plea that upon receiving that notice, he understood for the first time that he could actually be deported. Cardenas secured an immigration attorney 17 months later in November

2012, and was ordered deported on June 12, 2013, a decision which he appealed. Cardenas, however, waited until March 30, 2015, almost four years after receiving the DHS notice, two and half years after obtaining an immigration attorney, and almost two years after he was ordered deported, before filing his motion to withdraw guilty plea.

**{¶ 35}** We find the facts of this case to be more akin to the facts in *Abukhalil* and *Huang* and distinguishable from those in *Sibai*. Cardenas's four-year delay in filing his motion to withdraw guilty plea is also in stark contrast to the 14-month delay in *Ayupov*. Although Cardenas was in the process of appealing the immigration court's deportation decision and hoped to obtain relief through that system, under the specific circumstances of this case, the trial court did not abuse its discretion in finding that Cardenas's delay in filing his motion to withdraw guilty plea was unreasonable.

**{¶ 36}** Cardenas's second argument is overruled.

### 3. Ineffective Assistance of Counsel

**{¶ 37}** Under his third claim, Cardenas contends he should have been permitted to withdraw his guilty plea on the basis of ineffective assistance of counsel because his former attorney failed to properly advise him that he could be deported as a result of pleading guilty. This claim was brought pursuant to Crim.R. 32.1, which provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." As a result, because Cardenas moved to withdraw his plea after sentencing, the trial court was required to determine whether granting the motion would correct a manifest injustice.

**{¶ 38}** It is well established that "[i]neffective assistance of counsel can constitute manifest injustice sufficient to allow the post-sentence withdrawal of a guilty plea." *State v. Banks*, 2d Dist. Montgomery No. 25188, 2013-Ohio-2116, ¶ 9, citing *State v. Dalton*, 153 Ohio App.3d 286, 2003-Ohio-3813, 793 N.E.2d 509, ¶ 18 (10th Dist.). To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must show that (1) defense counsel's performance was so deficient that he was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) that defense counsel's errors prejudiced the defendant. *Id.* The failure to make either showing defeats a claim of ineffectiveness of trial counsel. *Id.*

**{¶ 39}** With respect to the first prong, deficient performance, it has been held that "[a] defense attorney has a duty to advise a noncitizen client that 'pending criminal charges may carry a risk of adverse immigration consequences,' and, if it is 'truly clear' what those consequences are, counsel must correctly advise the defendant of the consequences." *State v. Galdamez*, 2015-Ohio-3681, 41 N.E.3d 467, ¶ 16 (10th Dist.), quoting *Padilla v. Kentucky*, 559 U.S. 356, 369, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). "A defense attorney's failure to advise their client accordingly satisfies the first prong of *Strickland*, as it constitutes deficient performance." *Id.* *Accord State v. Ayesta*, 8th Dist. Cuyahoga No. 101383, 2015-Ohio-1695, ¶ 15, citing *Padilla* at 373-374 (providing misadvice about immigration consequences or failing to advise at all of potential deportation consequences associated with a plea satisfies the first prong of *Strickland*).

**{¶ 40}** In this case, Cardenas's former attorney testified and provided an affidavit

averring that he did not advise Cardenas that he may be subject to deportation. However, counsel also testified that he told Cardenas he would not be deported as a result of his status as a lawful, permanent resident. Cardenas testified that his former attorney never discussed the potential for deportation with him. However, Cardenas also testified that his attorney told him he "probably wouldn't have any problems" with respect to deportation. Hearing Trans. (Apr. 9, 2015), p. 32. Based on the evidence of record, we find that Cardenas's trial counsel rendered deficient performance in either failing to advise or misadvising Cardenas on the possible deportation consequences of his plea, thus satisfying the first prong of the *Strickland* test.

{¶ 41} With respect to the second prong of the *Strickland* test, a defendant may demonstrate prejudice from entering a guilty plea by demonstrating that " 'there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty.' " *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992), quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In the specific context of a defense counsel failing to advise a defendant of the potential immigration consequences of entering a plea, the United States Supreme Court has held that a defendant demonstrates prejudice by convincing "the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. 372, 130 S.Ct. 1473, 176 L.Ed.2d 284. *Accord Galdamez* at ¶ 17.

{¶ 42} In undergoing the rationality analysis, the Tenth District in *Galdamez* took certain factors into consideration, including: (1) whether the timing of the defendant's motion to withdraw plea bolsters his assertion that he would not have entered the plea had he received competent advice from counsel; (2) whether a guilty plea automatically

subjects the defendant to deportation, thus making it rational for a defendant to take his chances at trial rather than subject himself to automatic deportation; and (3) the likeliness of a favorable outcome at trial had the defendant not pled guilty, as it would not be rational for a defendant to forgo a plea bargain and go to trial if a defendant faces overwhelming evidence of his guilt. *Galdamez,* 2015-Ohio-3681, 41 N.E.3d 467 at ¶ 37-42.

**{¶ 43}** As to the timing of Cardenas's motion to withdraw guilty plea, we have already determined that the delay in filing his motion is unreasonable. Accordingly, the delay does not weigh in favor of withdrawing his plea nor bolster his assertion that he would not have pled guilty had he received competent advice from his former attorney. This is particularly true here considering Cardenas admitted that he fully understood that he could be deported once he received the June 2011 DHS notice, yet waited almost four years after that to file his motion to withdraw guilty plea.

**{¶ 44}** The second factor—whether Cardenas would automatically be subject to deportation as a result of his plea—however, supports finding that he would not have otherwise entered his guilty plea had his counsel not rendered deficient performance. The record indicates that the DHS notified Cardenas that he was subject to deportation under sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the Immigration and Nationality Act, which are codified in the United States Code as 8 U.S.C.A. §1227(a)(2)(A)(iii), and 8 U.S.C.A. §1227(a)(2)(B)(i). Section 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." Likewise, Section 1227(a)(2)(B)(i) provides that "[a]ny alien who at any time after admission has been convicted of a violation of * * * any law or regulation of a State, the United States, or a foreign country relating to a controlled substance * * * other than a single offense

involving possession for one's own use of 30 grams or less of marijuana, is deportable."

**{¶ 45}** We note that an "aggravated felony" includes "illicit trafficking in a controlled substance * * * including a drug trafficking crime * * *." 8 U.S.C.A. § 1101(a)(43)(B). A "controlled substance" is defined as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C.A. § 802(6). Pursuant to 21 U.S.C.A. § 812(c), cocaine is a schedule II controlled substance. Therefore, Cardenas's conviction for trafficking between five and ten grams of cocaine qualifies as an "aggravated felony."

**{¶ 46}** While the use of the word "deportable" in the aforementioned code provisions indicates that deportation is not a certainty or immediate, in analyzing the same term in a similar provision of the United States Code, the Eighth District Court of Appeals explained that:

> While the word "deportable," in its most literal interpretation, means "able to be deported," as the United States Supreme Court has recognized, the practical result of such a conviction is that the alien almost always will be deported. *See Padilla* at 360-364 (explaining how federal law has changed since the 1990s and stating that "[u]nder contemporary law, if a noncitizen has committed a removable offense * * * his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses. *See* 8 U.S.C. 1229b." Courts have been describing the level of certainty of deportation for deportable offenses as "virtually automatic" and "unavoidable," *United States v. Couto*, 311 F.3d

179, 184 (2d Cir.2002), "certain," *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347, 325 (2001), and "presumptively mandatory," *Hernandez v. State*, 124 So.3d 757, 763 (Fla.2012).

*Ayesta*, 8th Dist. Cuyahoga No. 101383, 2015-Ohio-1695 at ¶ 7.

**{¶ 47}** Based on the prevailing view, we find that it would be reasonable to believe that Cardenas, a lawful, permanent resident of the United States for 27 years with a wife and three children who are all United States citizens, would likely have taken his chance at trial rather than risk the high likelihood of being deported and separated from his family. Cardenas averred the same in his affidavit. Thus, in that respect, it would have been rational for Cardenas to reject the plea offer had he known he would likely be deported once convicted.

**{¶ 48}** However, the third factor of considering the outcome of trial does not weigh in Cardenas's favor. While the plea and sentencing hearing transcripts were not filed in this appeal, the record nevertheless includes a motion filed by the State requesting the release of $675 held by the Darke County Sheriff's Office that gives insight into the circumstances underlying the charges against Cardenas. The motion indicates that Cardenas's trafficking charges stemmed from a search warrant that was executed at his home after the Darke County Drug Task Force engaged in several controlled drug purchases at his residence. Based on this information, it is reasonable to assume that the State had a strong case against Cardenas. Furthermore, there is nothing in the record indicating that Cardenas had a defense to the trafficking charges. Accordingly, the record indicates that a favorable outcome at trial would have been highly unlikely, thus making the decision to reject a plea agreement irrational.

{¶ 49} We also note that while Ohio courts have previously held that a trial court's proper advisement under R.C. 2943.031 cures the prejudice resulting from an attorney's deficient performance, more recently, Ohio courts and federal courts have begun to back away from that principle and are holding that a proper advisement *may* preclude a finding of prejudice. *Galdamez*, 2015-Ohio-3681, 41 N.E.3d 467 at ¶ 25; *Ayesta*, 8th Dist. Cuyahoga No. 101383, 2015-Ohio-1695 at ¶ 20; *State v. Yapp*, 2015-Ohio-1654, 32 N.E.3d 996, ¶ 16 (8th Dist.); *State v. Arrunategui*, 9th Dist. Summit No. 26547, 2013-Ohio-1525, ¶ 15; *United States v. Batamula*, 788 F.3d 166 (5th Cir.2015), *rehearing en banc granted*, 805 F.3d 611 (5th Cir.2015), *on rehearing en banc*, 823 F.3d 237 (5th Cir.2016); *United States v. Kayode*, 777 F.3d 719, 728-29 (5th Cir.2014) (while judicial admonishments [regarding the possible deportation consequences of a plea] are not a substitute for effective assistance of counsel, they are relevant under the second *Strickland* prong in determining whether a defendant was prejudiced by counsel's error). As previously discussed, Cardenas conceded that the trial court in this case substantially complied with the advisement in R.C. 2943.031(A), and while not determinative, this fact weighs against a finding of prejudice.

{¶ 50} Based on the foregoing analysis, we conclude that the trial court did not abuse its discretion in finding no manifest miscarriage of justice with respect to Cardenas's ineffective assistance of counsel claim. Although the trial court incorrectly found that Cardenas's trial counsel did not render deficient performance, it correctly determined that Cardenas failed to establish the prejudice prong of the *Strickland* analysis, albeit for different reasons. *See State v. Hall,* 2d Dist. Miami No. 97 CA 22, 1997 WL 691509, *1 (Oct. 24, 1997)*, citing Newcomb v. Dredge*, 105 Ohio App. 417, 152

N.E.2d 801 (2d Dist.1957) ("[i]f a trial court has stated an erroneous basis for its judgment, an appellate court will affirm the judgment if it is legally correct on other grounds, that is, when it achieves the right result for the wrong reasons").

**{¶ 51}** The unreasonable delay in filing his motion to withdraw guilty plea, the unlikelihood of him succeeding at trial, and his professed understanding of the trial court's substantially compliant R.C. 2943.031 advisement does not support Cardenas's claim that he would not have accepted the plea agreement and entered a guilty plea had his attorney correctly advised him that deportation was indeed a possibility. We find that the strongest evidence to that effect is that Cardenas did not seek to withdraw his plea at a reasonable time after he was notified by the DHS that he was subject to deportation.

**{¶ 52}** Cardenas's third argument is overruled.

### 4. Res Judicata

**{¶ 53}** Under his fourth claim, Cardenas contends the trial court erred in finding that his motion to withdraw guilty plea was barred by the doctrine of res judicata. This claim is moot because despite the trial court concluding that res judicata barred the motion, the trial court still ruled on the merits of Cardenas's motion to withdraw guilty plea and properly overruled it.

**{¶ 54}** Cardenas's fourth argument is overruled.

### III. Conclusion

**{¶ 55}** Having overruled all of Cardenas's arguments, the judgment of the trial court overruling Cardenas's motion to withdraw guilty plea is affirmed.

. . . . . . . . . . .

HALL, J., concurs.

DONOVAN, P.J., dissenting.

{¶ 56} I respectfully dissent. Simply put, Cardenas was the victim of ineffective assistance of counsel at every stage of the instant proceedings. Moreover, in view of the totality of the circumstances surrounding Cardenas' ill-advised guilty plea and subsequent lengthy deportation proceedings, I find that the four-year delay in filing his motion to withdraw his guilty plea was not unreasonable.

{¶ 57} I agree with the majority that Attorney Finnarn's failure to inform or misadvising Cardenas that he would be subject to deportation if he pled to, and was subsequently found guilty of three counts of trafficking constituted ineffective assistance. At the hearing for Cardenas' motion to withdraw his guilty pleas held on April 9, 2015, Attorney Finnarn testified that he never discussed the possibility of deportation with the defendant. Specifically, Finnarn testified that Cardenas was not subject to deportation because he possessed a social security card, and he was disabled. Finnarn's advice to Cardenas that he "probably wouldn't have any problems" regarding deportation is clearly ineffective given Cardenas' lack of knowledge with respect to the deportation process. Thus, the first prong of *Strickland* is satisfied.

{¶ 58} However, with respect to *Strickland's* second prong, I believe that the majority has incorrectly found that Cardenas was not prejudiced by Attorney Finnarn's concededly deficient counseling. As a result of Attorney Finnarn's deficient performance, Cardenas pled guilty to the charges instead of exercising his constitutional right to trial. Upon being found guilty after his pleas, Cardenas was subject to removal

proceedings. Cardenas asserts that, if he had received correct advice regarding the consequences of his pleas, he would not have pled guilty, and would have taken his case to trial. In determining prejudice, we must ask whether a decision to reject the plea would have been rational under the circumstances. *Padilla* at 372, 130 S.Ct. 1473, 176 L.Ed. 2d 284. Here, Cardenas had nothing to lose and everything to gain by taking his case to trial, especially in light of the fact that he was automatically subject to deportation upon being found guilty. *Galdamez*, 2015-Ohio-3681, 41 N.E.3d 467, ¶ 39 (10th Dist.). Cardenas has been a lawful, permanent resident of the United States since he was married to a U.S. citizen and has a family. It is therefore reasonable to conclude that Cardenas would have decided to take his chances at trial, rather than subject himself to automatic deportation.

**{¶ 59}** I'd also find that Cardenas' four year delay in filing his motion to withdraw was reasonable under the circumstances presented in the instant case. First, it is significant to note that R.C. 2943.031 provides no time limit regarding when a defendant may file a motion to withdraw a guilty plea based upon their attorney's failure to advise him of the potential for deportation. *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355. However, even a considerable delay in filing the motion to withdraw will not support a denial of said motion when the guilty plea will result in immigration-related consequences which did not become evident for some time after the plea was entered. *State v. Khan*, 2d Dist. Montgomery No. 21718, 2007-Ohio-4208, ¶ 39.

**{¶ 60}** Here, Cardenas entered his pleas on April 21, 2011, and was sentenced to an aggregate nine month sentence on May 31, 2011. While he was incarcerated, the DHS issued a deportation notice to Cardenas on June 11, 2011. Cardenas first

appeared before the immigration court on November 7, 2012. After a series of motions and administrative hearings, the Board of Immigration Appeals (BIA), on August 24, 2014, dismissed his appeal of the DHS's decision ordering his deportation to Mexico. Thereafter, Cardenas appealed the decision from the BIA in the Sixth Circuit Court of Appeals in September of 2014. The Sixth Circuit granted a stay of the Immigration Court's removal order on December 18, 2014. While the appeal was pending in the Sixth Circuit, Cardenas filed his motion to withdraw his guilty plea in the Darke County Court of Common Pleas on March 30, 2015.

{¶ 61} Simply put, Cardenas exhausted all of his administrative remedies before pursuing the withdrawal of his plea. Therefore, I cannot conclude that Cardenas' conduct was dilatory. Once it became clear that his administrative path was foreclosed, he quickly filed his motion to withdraw based upon the fact the he was not advised by the trial court, or his admittedly deficient counsel, that he would be subject to automatic deportation upon pleading guilty to the instant offenses. On these facts, the timing of Cardenas' motion to withdraw was reasonable and justified. Similar to the defendant in *Sibai*, wherein the appellate court held that a ten-year delay was reasonable, Cardenas' guilty pleas had significant immigration consequences that were not apparent until several years after he entered his plea. *Id.* at 2005-Ohio-2730, ¶ 12-13.

{¶ 62} Accordingly, I would reverse.

. . . . . . . . . . . . .

Copies mailed to:

Deborah S. Quigley
Karen D. Bradley
Hon. Jonathan P. Hein