[Cite as *State v. McDaniel*, 2023-Ohio-3999.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-9 |
| | : | |
| v. | : | Trial Court Case No. 20CR00049 |
| | : | |
| SHANNON McDANIEL | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 3, 2023

. . . . . . . . . . .

ERIC J. ALLEN, Attorney for Appellant

ERIN M. MINOR & ANTHONY J. MILLER, Attorneys for Appellee

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Shannon McDaniel appeals from a judgment of the Darke County Court of Commons Pleas denying a motion to withdraw his guilty plea without a hearing. For the reasons that follow, the judgment of the trial court will be affirmed.

## I.     Facts and Procedural History

{¶ 2} On June 2, 2020, McDaniel was charged by bill of information with 14 counts of sexual battery, in violation of R.C. 2907.03(A)(5). The charges were the culmination of a multi-county, multi-state investigation into McDaniel's sexual conduct with a minor girl. The agreement, which was negotiated between McDaniel's attorney and law enforcement agencies in Darke, Greene, Montgomery, and Franklin Counties in Ohio and Hamilton County in Indiana, was that Darke County officials would represent the other counties, who would forego prosecuting McDaniel provided there was a guilty plea. While there is no indication in the record of the nature or number of potential charges pending in each county, the bill of information included 10 counts of sexual battery stemming from conduct that occurred in Darke County, two counts from Greene County, one count from Montgomery County, and one from Franklin County. Hamilton County, Indiana, agreed that, in exchange for a guilty plea, it would forego prosecution for conduct that occurred in its jurisdiction.

{¶ 3} The victim, McDaniel's daughter who was adopted as a teenager from Ukraine, alleged that over the course of several years, he groomed, isolated, and then sexually abused her. She told the court that McDaniel had forced her "to have sex with him almost every day. When I would have a chiropractor or doctor appointment for my seizures, he would take me to my appointment and then rent a hotel room to have sex with me before we came home." Disposition Tr. at 25. According to both McDaniel and the victim, the sexual abuse occurred from late 2017 until the summer of 2018.

{¶ 4} On June 16, 2020, McDaniel waived a grand jury indictment and pled guilty

to the 14 counts of sexual battery listed in the bill of information. After a presentence investigation, McDaniel appeared in court on August 26 for his disposition. During that proceeding, the trial court heard from the victim, McDaniel, and McDaniel's wife. It also reviewed a large number of letters in support of McDaniel, a former sergeant in the Greenville Police Department. The court ultimately sentenced McDaniel to an aggregate prison term of 14 years: 12 months for each count to be served consecutively. In addition, upon his release, McDaniel will be required to register as a Tier III sex offender.

{¶ 5} In 2021, McDaniel challenged the imposition of consecutive sentences in his direct appeal to this Court. We affirmed. *State v. McDaniel*, 2d Dist. Darke No. 2020-CA-3, 2021-Ohio-1519. Then, on November 14, 2022, McDaniel, represented by new (current) counsel, filed a motion to withdraw his guilty plea. In a nine-page decision, the trial court denied McDaniel's motion without a hearing.

{¶ 6} This timely appeal followed, in which McDaniel has raised four assignments of error. We will address them in an order that facilitates our analysis.

## II.      Withdrawal of Guilty Pleas

{¶ 7} In his first assignment of error, McDaniel argues that the trial court erred when it failed to grant his motion to withdraw his guilty plea. Relatedly, in his fourth assignment of error, he claims the court should have held an evidentiary hearing before making its final decision. We disagree with both arguments.

{¶ 8} Crim.R. 32.1 states that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant

to withdraw his or her plea."

{¶ 9} Post-sentence motions to withdraw a guilty plea may only be made to correct a manifest injustice. Crim.R. 32.1. "Manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Williams*, 10th Dist. Franklin No. 03AP-1214, 2004-Ohio-6123, ¶ 5. "Under the standard of manifest injustice, a postsentence withdrawal motion is allowable only in extraordinary cases." *State v. Day*, 2d Dist. Greene No. 2015-CA-15, 2016-Ohio-36, ¶ 18. The moving party has the burden of showing manifest injustice. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus.

{¶ 10} Similarly, a hearing on a post-sentence plea withdrawal motion is not automatic. "To obtain a hearing, a movant must establish a reasonable likelihood that the withdrawal is necessary to correct a manifest injustice." (Citations omitted.) *State v. Nawman*, 2d Dist. Clark No. 2016-CA-43, 2017-Ohio-7344, ¶ 13. No hearing is required "where the motion is supported only by the movant's own self-serving affidavit, at least when the claim is not supported by the record." *State v. Stewart*, 2d Dist. Greene No. 2003-CA-28, 2004-Ohio-3574, ¶ 6.

{¶ 11} We review the trial court's decision on a motion to withdraw a guilty plea under the abuse of discretion standard. *State v. Baker*, 2018-Ohio-669, 105 N.E.3d 1271, ¶ 11 (2d Dist.).

{¶ 12} Here, McDaniel contends that, because of medical conditions and stress, he suffered from varying degrees of erectile dysfunction between the spring of 2016 and

the fall of 2018. He asserts that he was completely impotent and "unable to perform the acts alleged in at least part the bill of information." Appellant's Brief at 5. He reasons, then, that it is unjust that he was convicted and sentenced for crimes he could not have committed because he was unable to engage in sexual intercourse. This argument appears to be at least partially based on an incomplete understanding of the crime of sexual battery.

{¶ 13} R.C. 2907.03(A)(5) states that no person shall engage in sexual conduct with another when the offender is the other person's natural or adoptive parent.

{¶ 14} R.C. 2907.01(A) defines sexual conduct as:

vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another.

{¶ 15} Sexual conduct encompasses more than simply intercourse, and because the counts in the bill of information did not specify what kind of sexual conduct had occurred, McDaniel suffered no injustice, even taking his impotence claim as true. Assuming for the sake of argument that McDaniel was impotent and could not have had vaginal intercourse, he still could have committed the crime of sexual battery because there are many other ways of engaging in sexual conduct.

{¶ 16} While we have determined that McDaniel did not suffer an injustice in pleading guilty, it is nevertheless important to look carefully at the affidavits submitted to

fully understand if they supported his claim and if the trial court should have granted a hearing.

{¶ 17} McDaniel supported his motion to withdraw with affidavits or letters from himself, his wife, his doctor, his wife's chiropractor, and his trial attorney. Despite his claim that they supported the proposition that he had been impotent and could not have had intercourse during the entire period alleged in the bill of information, the affidavits were contradictory and did not match McDaniel's own on-the-record account of what had happened.

{¶ 18} We begin with McDaniel's own affidavit. In it, he admitted having "consensual sexual relations" with the victim in July 2018 but denied having "sexual relations" with her outside of that month. However, within the same document he claimed that from spring 2018 until October 2018, he had been "completely impotent." It is logically inconsistent that McDaniel would recount being prescribed Viagra in July 2018 and then claim impotence. The affidavit also contradicted the statements made in his PSI narrative, which detailed how the sexual abuse began in late 2017 and "went on into the summer of 2018." Again, we reiterate that there are numerous ways to engage in sexual conduct besides intercourse.

{¶ 19} The affidavit of Dawn McDaniel was contradictory to McDaniel's statements as well. She averred that her husband had suffered from degrees of erectile dysfunction from spring 2016 until October 2018, and from complete impotence from spring until October 2018. Not only was this inconsistent with what McDaniel had written in his PSI narrative (that the sexual relations occurred from 2017 to mid-2018), but it contradicted

his affidavit, which admitted having sex with the victim in July 2018.

{¶ 20} McDaniel's trial attorney also submitted an affidavit in this matter. The attorney admitted in his affidavit that McDaniel had confided to him that he had had sex with the victim. McDaniel also told the attorney that he had suffered from erectile dysfunction from 2016 until the spring of 2018. That timeline did not align with that of Dawn McDaniel (who claimed her husband was completely impotent from spring 2018 through October 2018) or of McDaniel himself, who claimed both that he had sex with the victim in July 2018 and that he was completely impotent through October 2018.

{¶ 21} Finally, McDaniel submitted documents from Dr. John Studebaker, his family physician, and from Dr. Roger Lyss, his wife's chiropractor. Dr. Studebaker noted in his affidavit that he had seen McDaniel as a patient on July 16, 2018, and had prescribed Viagra after McDaniel told him that he had experienced erectile dysfunction for a few months. In an October 2022 letter from Dr. Lyss, he recounted that one time while he was treating McDaniel's wife, McDaniel had been present in the room too and had asked if a chiropractor could help with erectile dysfunction. These documents were submitted to emphasize that McDaniel really had suffered from erectile dysfunction during the timeframe in question, but neither of the statements from the doctors concluded that McDaniel had been impotent or that he had been incapable of engaging in *some* form of sexual conduct. Additionally, Dr. Lyss's letter did not state when their interaction occurred.

{¶ 22} The timeliness of McDaniel's motion to withdraw his guilty plea was another factor to be considered. Although Crim.R. 32.1 does not prescribe a time limitation on a motion to withdraw, an " 'undue delay between the occurrence of the alleged cause for

withdrawal of a guilty plea and the filing of a motion under Crim.R. 32.1 is a factor adversely affecting the credibility of the movant and militating against the granting of the motion.' " *State v. Bush,* 96 Ohio St.3d 235, 2002-Ohio-3993, 773 N.E.2d 522, ¶ 14, quoting *State v. Smith,* 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph three of the syllabus. *See also State v. Cardenas*, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 29 (2d Dist.). McDaniel pled guilty in June 2020 but did not file his motion to withdraw his guilty plea until November 2022, a delay of more than two years. This long gap between the plea and most recent motion militated against a court granting his motion, especially because McDaniel offered no explanation for the delay and because he would have known about his purported erectile dysfunction at the time of the plea and could have raised the issue at any time.

{¶ 23} Based on the untimeliness of the motion and the contradictory nature of the affidavits, and because McDaniel suffered no manifest injustice (as one can commit sexual battery without engaging in vaginal intercourse), we conclude that the trial court did not abuse its discretion when it denied his motion to withdraw his guilty plea without a hearing. The first and fourth assignments of error are overruled.

### III. Ineffective Assistance of Counsel

{¶ 24} In his second assignment of error, McDaniel argues that he was prejudiced by ineffective assistance of counsel at both the trial stage and on direct appeal.

{¶ 25} Ineffective assistance of counsel can constitute a manifest injustice sufficient to permit a post-sentence withdrawal of a guilty plea. *State v. Banks*, 2d Dist. Montgomery No. 25188, 2013-Ohio-2116, ¶ 9. "When arguing the ineffective assistance

of counsel in a motion to withdraw a plea, the defendant must show that counsel's ineffectiveness affected whether the defendant made a knowing and voluntary plea." *Id*., quoting *State v. Doak,* 7th Dist. Columbiana Nos. 03 CO 15 and 03 CO 31, 2004-Ohio-1548, ¶ 3.

**{¶ 26}** For a plea to be made knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C). *State v. Brown*, 2d Dist. Montgomery Nos. 24520, 24705, 2012-Ohio-199, ¶ 13. "[T]he rule 'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.' " *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168, 331 N.E.2d 411 (1975).

**{¶ 27}** Crim.R. 11(C)(2)(c) requires that the trial court inform the defendant of the constitutional rights he is waiving: the right to a jury trial, the right to confront witnesses, the right to compulsory process, the right against self-incrimination, and the right to require the State to establish guilt beyond a reasonable doubt. *State v. Perdue*, 2022-Ohio-722, 185 N.E.3d 683, ¶ 11 (2d Dist.). Strict compliance with the rule is required; a failure to strictly comply with this part of the Rule invalidates the plea. *Id.*

**{¶ 28}** "A trial court must substantially comply with the notification of non-constitutional rights contained in Crim.R. 11(C)(2)(a) and (b), and a defendant must show prejudice before a plea will be vacated for failure to substantially comply with these notifications." *State v. Easter*, 2016-Ohio-7798, 74 N.E.3d 760, ¶ 8 (2d Dist.). "Substantial compliance" means that under the totality of the circumstances the defendant

understands the implications of his plea and the rights he is giving up. *State v. Thomas*, 2d Dist. Montgomery No. 26907, 2017-Ohio-5501, ¶ 37; *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

{¶ 29} McDaniel does not contend that the trial court failed to strictly comply with the constitutional requirements of Crim.R. 11(C)(2)(c) or that it did not substantially comply with the non-constitutional notifications found in Crim.R. 11(C)(2)(a) and (b). Indeed, our review of the plea transcript finds that the trial court diligently notified McDaniel of his constitutional and non-constitutional rights and that he repeatedly confirmed that he understood them. There is nothing in the record that would lead us to believe that McDaniel did not knowingly and voluntarily enter into his guilty plea and, hence, we cannot conclude that there was a manifest injustice sufficient to permit a post-sentence withdrawal of his guilty plea.

{¶ 30} Nevertheless, McDaniel argues that his trial attorney should have used the information that he could not "perform sexually" to negotiate with the State to "reduce the number of charges or as mitigation for a lighter sentence." Appellant's Brief at 7. He then, in the next paragraph, seemingly changes his argument to contend that he would have not pled guilty to "those counts that covered a time for which he had a defense, that he was incapable of having sex with the alleged victim." *Id.*

{¶ 31} First, as to the contention that McDaniel's trial attorney should have used the information that he was purportedly impotent to reduce the number of charges or to get a lenient sentence, we note that McDaniel emerged with a very favorable plea deal. According to the record, multiple jurisdictions across two states had been investigating

him for sexually abusing his teenage daughter. His attorney was able to negotiate a plea to a bill of information that prevented him from standing trial in Franklin, Greene, and Montgomery Counties in Ohio and Hamilton County in Indiana. It also apparently lowered the level of offense to sexual battery, a felony of the third degree. This is important because, according to the victim's testimony, there was a potential for not only many more charges, but more serious charges. It is also notable that even though the 14 counts were ordered to run consecutively to each other, McDaniel received a minimum sentence of 12 months on each one; had the court chosen to, it could have sentenced him to a total of 70 years.

{¶ 32} McDaniel's other argument seems to be that it was ineffective for his counsel to advise him to plead guilty to some of the charges instead of taking them to trial. This argument also fails, as "[a]n attorney's advice to take a plea is not ineffective assistance of counsel." *State v. Chatman*, 2d Dist. Montgomery No. 25766, 2014-Ohio-134, ¶ 7.

{¶ 33} Finally, McDaniel posits that his original appellate counsel had a conflict of interest because he also represented McDaniel at the trial phase of the proceedings and that "[counsel] failed to apprise the client that he could not raise his own ineffective assistance, thereby waiving it on appeal." Appellant's Brief at 8. We find this argument to be meritless as we have already established that McDaniel cannot demonstrate a manifest injustice and thus his trial counsel was not ineffective.

{¶ 34} McDaniel's trial attorney's performance was not ineffective and did not lead to a manifest injustice; McDaniel entered his guilty plea knowingly and voluntarily. His

second assignment of error is overruled.

## IV. Miscellaneous Claims

{¶ 35} In his third assignment of error, McDaniel makes what can best be described as miscellaneous claims, rehashing those already discussed in previous sections. His arguments range from alleging that, had he not pled guilty to sexual battery, the State would have been unable to produce sufficient evidence to gain a conviction, to contending that his plea was not made in a voluntary manner. The arguments are unavailing.

{¶ 36} He initially avers that the State would not have been "able to produce sufficient evidence of sexual conduct." As he has argued in previous sections, McDaniel asserts that because he was allegedly impotent, he was unable to engage in sexual intercourse during the timeframe in question. Again, a man does not need to achieve an erection to commit sexual battery, because there are many other ways to engage in sexual conduct (e.g., fellatio; cunnilingus; the insertion of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another). Further, the bill of information did not allege in what manner the sexual conduct had occurred, only that it did occur. And finally, arguing whether the State could prove that he had intercourse with the victim was a futile exercise in this case because, as McDaniel acknowledged in his brief, "[a] guilty plea 'provides the necessary proof of the elements of the crime and sufficient evidence to support the conviction.' " Appellant's Brief at 9; *State v. Withrow*, 2016-Ohio-2884, 64 N.E.3d 553, ¶ 47 (2d Dist.), quoting *State v. Isbell*, 12th Dist. Butler No. CA2003-06-152, 2004-Ohio-2300, ¶ 16.

**{¶ 37}** His other argument, that his plea was not valid because it was not made in a knowing, intelligent, and voluntary manner, has been discussed in detail in the previous section and we will not repeat it here. McDaniel's third assignment of error is overruled.

## V. Conclusion

**{¶ 38}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.