[Cite as *State v. Adams*, 2020-Ohio-1140.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28446 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-278 |
| | : | |
| DARRYL E. ADAMS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 27th day of March, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

MARK J. BAMBERGER, Atty. Reg. No. 0082053, P.O. Box 189, Spring Valley, Ohio 45370
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant, Darryl E. Adams appeals from his convictions for one count of escape, a third degree felony pursuant to R.C. 2921.34(A)(1); and one count of unauthorized use of a vehicle, a first degree misdemeanor pursuant to R.C. 2913.03(A) and (D)(2). Raising two assignments of error, Adams argues that his conviction for escape should be reversed because the jury disregarded the manifest weight of the evidence in finding him guilty, and because his trial counsel was ineffective for failing to move for either a directed verdict or for judgment notwithstanding the verdict. Adams's arguments have no merit, and his convictions are therefore affirmed.

### I. Facts and Procedural History

{¶ 2} In Montgomery C.P. No. 2017-CR-2777, Adams was convicted on April 6, 2018, for one count of trafficking in heroin, a fourth degree felony pursuant to R.C. 2925.03(A)(2) and (C)(6)(c).[1] The trial court in that case sentenced him to community control sanctions for a period not to exceed five years, and on January 17, 2019, the court approved his admission into the Secure Transitional Offender Program ("STOP"). Those admitted must reside in the program's facility on South Gettysburg Avenue for the duration of their placements and may not leave the premises unescorted. Transcript of Proceedings 93:14-93:20, 96:20-97:22, 106:22-107:3, 124:16-127:5, and 128:22-129:3, June 10-11, 2019. Among other things, participants in the program engage in community service work. *Id.* at 107:4-107:19.

{¶ 3} On January 23, 2019, a private security officer drove Adams and two other participants in a van, which was owned by Montgomery County, to the nearby Volunteers

---

[1] We refer to that version of R.C. 2925.03 which was effective from September 14, 2016, until October 30, 2018.

of America building for a work assignment.   *Id.* at 105:19-106:3, 108:20-109:14, 115:4-115:10 and 136:19-137:12.   While the security officer and the other participants were occupied, Adams slipped into the driver's seat and drove away in the van.   *Id.* at 109:19-111:21.   The security officer contacted his supervisor, who altered law enforcement personnel.   *See id.* at 112:4-112:12.

{¶ 4} One or more days later, officers with the Dayton Police Department recovered the van in an alley on Indiana Avenue.[2]   *Id.* at 113:23-114:1, 137:1-137:12. On February 1, 2019, a Montgomery County grand jury indicted Adams in Montgomery C.P. No. 2019-CR-278 as follows: Count 1, escape, a violation of R.C. 2921.34(A)(1); Count 2, grand theft of a motor vehicle, a violation of R.C. 2913.02(A)(1); and Count 3, unauthorized use of a vehicle, a violation of R.C. 2913.03(A).   Adams's case proceeded to trial on June 10, 2019, and at the conclusion of the trial on June 11, 2019, the jury found him guilty on Counts 1 and 3, and not guilty on Count 2.

{¶ 5} In Case No. 2017-CR-2777, the trial court sentenced Adams to serve a term of 18 months in prison as a result of his violation of the conditions of community control originally imposed in that case.   Immediately after the conclusion of the trial in Case No. 2019-CR-278, which was heard by the same judge, the trial court sentenced Adams to

---

[2] Officer Timothy Polley testified on behalf of the Dayton Police Department.   Transcript of Proceedings 136:1-148:11.   He never mentioned the date, referring only to "[t]hat day," but neither the State nor Adams's counsel asked him to specify the date for the record. *Id.*   Yet, Polley noted that the van must have been parked in the alley since the evening before he and his partner found it, based on snow accumulation, and the private security officer testified that the van "was returned the next---the next day or two after it was located."   *Id.* at 113:23-114:1 and 137:1-137:9.   The return of service filed in the trial court indicated that Adams was served with the resulting warrant for his arrest on February 1, 2019; he was being held in jail at the time.   Return of Service 1-2, Feb. 4, 2019.

serve 30 months in prison for his conviction on the charge of escape, and 180 days in jail for his conviction on the charge of unauthorized use of a vehicle, with the terms to be served concurrently to each other, but consecutively to the sentence in Case No. 2017-CR-2777. Adams timely filed his notice of appeal from the judgment in Case No. 2019-CR-278 on June 20, 2019.

## II. Analysis

{¶ 6} For his first assignment of error, Adams contends that:

THE TRIAL COURT FAILED TO PROPERLY CONSIDER THE MANIFEST EVIDENCE OF INNOCENCE[.]

{¶ 7} Adams argues that "[i]f he was [sic] not in custody at the time in question, his time and involvement with STOP would not be mandatory[,] and thus he would be liable [sic] for an escape." Appellant's Brief 12. He offers no challenge to his conviction for unauthorized use of a vehicle. *See id.* at 10-17.

{¶ 8} Comparing the relatively relaxed procedures for supervising participants residing in STOP's facility on Gettysburg Avenue to the rigid procedures for securing inmates in a jail or a prison, Adams claims "there was no mandate for [him] to do anything other than what he did, thus he clearly did not escape from his obligation, but instead do [sic] what he thought was allowed and what was told to him as being acceptable." *Id.* at 13. Essentially, Adams claims that although he was serving a court-ordered term of community control sanctions, and was specifically "ordered [by the court to] enter and complete drug intervention at S.T.O.P.," he was not "under detention" for purposes of R.C. 2921.34(A)(1). Appellant's Brief 13; Entry Granting S.T.O.P. 1, Jan. 17, 2019. This argument lacks merit.

{¶ 9} In a challenge to a conviction based on the weight of the evidence, an appellate court considers not only the quantity of the evidence, but the quality of the evidence, as well. *See State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12; *State v. Thigpen*, 2016-Ohio-1374, 62 N.E.3d 1019, ¶ 6 (8th Dist.). Accordingly, the appellate court must review the record; weigh the evidence and all reasonable inferences; consider the credibility of witnesses; and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created a manifest miscarriage of justice warranting a new trial. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *see also State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8. A trial court's judgment, however, "should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Hill* at ¶ 8, quoting *Martin* at 175. Although the appellate court "must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses," the court "may determine which of several competing inferences suggested by the evidence should be preferred." (Citation omitted.) *State v. Cochran*, 2d Dist. Montgomery No. 27023, 2017-Ohio-216, ¶ 6.

{¶ 10} Here, to obtain a conviction on the charge of escape, the State had to prove that Adams, "knowing [he] was under [detention] or being reckless in that regard, "purposely [broke] such detention." *Ohio Jury Instructions*, CR Section 521.34(A)(1) (Rev. Dec. 10, 2011). During its case in chief, the State introduced the contract that Adams had to sign at the time of his entry into STOP (the "STOP Contract"), in which Adams had promised " 'to remain in the STOP building and [to] not leave the premises or

work assignments without authorization.' " Transcript of Proceedings 91:24-92:19 and State's Exhibit 1. The STOP Contract included a warning that "[a]ny unauthorized absence [would] result in [the issuance of an] absconding warrant," and a further warning that if Adams were to "abscond from [STOP], i.e., from the facility, [from a] community service worksite, [or from a] medical facility [or] any other off-site location, [he would] be charged with escape pursuant to [R.C.] 2921.34." *Id.* at 92:17-93:3 and State's Exhibit 1.

{¶ 11} On direct examination, Adams admitted he drove away from the Volunteers of America building in a van that he did not own or have permission to drive, and he acknowledged that he had been cautioned upon his entry into STOP that leaving without authorization would constitute a violation of his community control sanctions. *See* Transcript of Proceedings 154:20-156:4. He denied on cross-examination that he signed or even read the STOP Contract, yet as he had on direct, he confirmed his understanding that "everybody [in STOP knew they were] not supposed to leave." *See id.* at 163:7-164:20. Nevertheless, he argues on appeal that he "did not legally 'escape' " because "he thought [he] was allowed," without permission, to drive away from the Volunteers of America building in a vehicle he did not own while serving community control sanctions to which he had been sentenced in a criminal case. *See* Appellant's Brief 13.

{¶ 12} The word "detention" as used in R.C. 2921.34(A)(1) "is a legal [term] that does not imply a location or [a] method of confinement, but instead is an abstract term describing a person's status."[3] (Citation omitted.) *State v. Boggs*, 2d Dist. Montgomery

---

[3] In relevant part, the statutory definition of "detention" is "confinement in any public or private facility for custody of persons charged with or convicted of crime in this state," including "confinement in any vehicle for transportation to or from any [such] facility" and

No. 22081, 2008-Ohio-1583, ¶ 11.   In Case No. 2017-CR-2777, the trial court "ordered that * * * Adams enter and complete drug intervention at S.T.O.P., in lieu of a 180 day residential community sanction in the Montgomery County Jail," and participants in STOP, a "lockdown drug education program," may not leave the STOP facility without authorization.   Entry Granting S.T.O.P. 1; Transcript of Proceedings 89:5-89:8 and 107:4-107:21.   STOP is a secured facility, and because Adams's participation in STOP was ordered by the trial court as a sanction for his commission of a criminal offense, he was effectively in custody and serving a criminal sentence at the time of his impromptu departure from the Volunteers of America.   We hold, then, that the jury did not disregard the manifest weight of the evidence by finding Adams guilty of escape in violation of R.C. 2921.34(A)(1).   Adams's first assignment of error is overruled.

{¶ 13} For his second assignment of error, Adams contends that:

THE DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILURE [sic]

TO ASK FOR A DIRECTED VERDICT OR JUDGMENT

NOTWITHSTANDING THE VERDICT[.]

{¶ 14} Adams claims that two or more of the State's witnesses testified that he should have been charged with violating the conditions of his community control sanctions, rather than being charged with escape under R.C. 2921.34(A)(1).   Appellant's Brief 16.   He argues accordingly that his trial counsel was ineffective for "fail[ing] to raise this seminal issue [during] closing [argument]," for "not ask[ing] for a directed verdict prior

---

"supervision by any employee of any [such] facility * * * that is incidental to * * * confinement in the facility but that occurs outside the facility."   R.C. 2921.01(E).   The trial court provided substantially the same definition of "detention" in its instructions to the jury.   Transcript of Proceedings 210:19-210:23.

to jury deliberations," and for not moving for "judgment notwithstanding the verdict * * * after jury deliberations." *Id.*

{¶ 15} To prevail on a claim of "ineffective assistance of counsel, a defendant must satisfy the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *State v. Cardenas*, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 38 (2d Dist.). The *Strickland* test requires a showing that: "(1) defense counsel's performance was so deficient that [it did not fulfill the right to assistance of counsel] guaranteed under the Sixth Amendment to the United States Constitution; and (2) * * * defense counsel's errors prejudiced the defendant." *Id.*, citing *Strickland* at 687. Judicial "scrutiny of counsel's performance must be highly deferential," so "a [reviewing] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). To show prejudice, the defendant bears the burden to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of [a given] proceeding would have been different." *Id.* at 694; *State v. Southern*, 2d Dist. Montgomery No. 27932, 2018-Ohio-4886, ¶ 47. A failure to make either showing defeats the claim. *Cardenas* at ¶ 38.

{¶ 16} In criminal cases, neither motions for a directed verdict nor motions for judgment notwithstanding the verdict are available. *See State v. Bump*, 2d Dist. Champaign No. 2015-CA-10, 2016-Ohio-4717, ¶ 55; *State v. Boykins*, 3d Dist. Marion No. 9-14-35, 2015-Ohio-935, ¶ 25, fn.2. The equivalent of both of these in criminal cases is a motion for acquittal under Crim.R. 29, which Adams's counsel made at the commencement of the jury's deliberations. *Bump* at ¶ 55; *Boykins* at ¶ 25, fn.2;

Transcript of Proceedings 225:12-225:17. Adams's trial counsel could not have been ineffective for failing to make motions that were unavailable in a criminal trial, and Adams cannot demonstrate that he was prejudiced by counsel's performance, given that counsel made the equivalent motion under Crim.R. 29. Adams's second assignment of error is overruled.

### III. Conclusion

{¶ 17} Adams's arguments lack merit. The trial court in Case No. 2017-CR-2777 ordered Adams to participate in STOP, and his unauthorized departure from the program while on a work assignment qualified as breaking "detention" for purposes of R.C. 2921.34(A)(1). Furthermore, his trial counsel did not render less than professional assistance for failing to make motions that are unavailable in criminal proceedings. Therefore, the trial court's judgment is affirmed.

. . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Mark A. Bamberger
Hon. Barbara P. Gorman